452

*In the Matter of the Eligibility of Purported Employees of* HILLMAN INVESTMENT COMPANY.[1]

'Reported in 131 P. (2d) 160.

Clarence L. Gere, for appellant.

The Attorney General, George W. Wilkins, and John F. Lindberg, Assistants, for respondent.

DRIVER, J.—This action involves the eligibility of three claimants to unemployment compensation. The administrative determination that all of them were eligible was sustained in successive appeals which carried the case to the superior court. That court also upheld the decision in favor of the claimants, and the employer, the Hillman Investment Company, a corporation, has appealed to this court.

Appellant contends that the court erred in holding, first, that the claimants were eligible employees; and, second, that the Hillman Investment Company was an employer under the unemployment compensation act. Chapter 162, Laws of 1937, p. 574 (Rem. Rev. Stat. (Sup.), § 9998-101 [P. C. § 6233-301] et seq.).

The material facts are fully stated in the following excerpts from the findings of fact made by the appeal examiner:

"Hillman Investment Company, a corporation, has been engaged, during all years in question, in the business of developing and selling real estate. In 1935 the company had on its hands literally thousands of parcels of property located in Snohomish and King Counties, with an annual tax burden of around $35,000. At the time there was not a ready market for unimproved real estate and to liquidate this property and reduce its taxes the company embarked on a rather extensive building program.

"In this construction work the company used the services of the three claimants and of many other skilled workmen, such as carpenters, well-diggers, ma-

sons; painters, floor sanders, plumbers, plasterers, etc. Without exception, all persons engaged in this work were purchasers of property under land contracts with the company. All received part of their pay, usually fifty per cent, in cash and the balance was applied on their contracts. Except for the type of services performed, the arrangements with the three claimants were substantially the same as those with all other workmen.

"Claimant Charles H. McCann had been a flyer by occupation and spent about twenty-two years in the service of the Federal government prior to 1935. He then bought a piece of property from the company and it became necessary for him to sink a well near his house. He had had no experience in well-digging before this time but, with the assistance of a neighbor and by means of the 'willow witch' method, was successful in locating water. After then helping another neighbor bring in a well, the word apparently got around that McCann was something of an expert in this line, and in the summer of 1938 Mr. Warren engaged him to locate and dig wells for the company.

"Part of McCann's remuneration was based on the depth to which he was required to dig each well. At first he was allowed $2.50 a foot—$1.50 cash and $1.00 credit on his contract. Out of this sum he paid his helper, also on a footage basis. Later, this arrangement was modified to provide for a payment of $1.50 per foot to McCann and the company paid all wages to the helper. After January 10, 1939, the company paid all helpers' wages at the rate of $3.00 or $4.00 a day rather than on a footage basis.

"In addition to this allowance, the company paid McCann for the time spent in locating the flow of water and constructing the well housings. The company also paid the transportation costs of both McCann and his helpers and supplied him with all necessary materials such as wire, powder, lumber, concrete and electrical fuses. The company furnished the necessary windlass and cables and paid for the sharpening of whatever tools were furnished by McCann, such as picks, shovels, etc. He has not engaged in well-digging since his con-

nection with the company was terminated on January 4, 1940.

"The next case to be considered is that of claimant Lawrence Jones, who is a plumber by occupation. Early in 1938 he purchased a home from the company and a short time later, on May 12, entered into an agreement . . . which recites:

" 'That WHEREAS: the first party (the company) desires the services of a plumber in the construction of certain buildings and whereas the second party (Jones) is an experienced plumber.

" 'IT IS THEREFORE UNDERSTOOD AND AGREED AS FOLLOWS:

" 'The second party will *under the sole direction of the first party* supply and furnish all labor necessary in roughing in the plumbing, and setting and installing all fixtures, including septic tank, in such buildings as indicated and directed by the first party. All work to be done in a first-class workmanship manner and subject to the approval of the first party.' (Italics ours.)

"The agreement also sets forth the pay scale for each type of house, depending on its size, and provides for certain additional allowances for sinks, boilers, extra drains, etc. The fifth and sixth paragraphs are as follows:

" 'It is also understood and agreed that ditch digging and the digging of holes for septic tanks shall be paid for by the first party in addition to the above at a rate not to exceed 50c per hour.

" 'Payments as above shall be made to second party or his helper as follows: one-half cash and one-half to be applied on Real Estate Contract covering the property that the second party is purchasing from the first party.'

"Except for certain modifications not important here, this agreement was in effect during the entire period of Jones' employment, which was terminated February 1, 1941. In the performance of this work Jones supplied all his own tools, but materials were of course furnished by the company. The digging of ditches and holes for septic tanks was done by Jones' stepson, who was paid fifty cents an hour. Pursuant to the terms of the agreement, half of this amount was applied on Jones' con-

tract and the other half paid in cash by the company through Jones.

"At times it became necessary for Jones to use assistants in the actual plumbing work. These men were supplied by Mr. A. T. Nelson, who was in charge of the construction of certain store buildings for the company at Lake City. The company paid the helpers on an hourly basis, but the evidence is in conflict as to whether or not the amounts were charged back to Jones. The weight of the evidence, we believe, establishes that all payments to the helpers other than his stepson were charged back.

"While installing plumbing in the store buildings Jones worked the same hours—8 a. m. to 4: 30 p. m.—as the other workmen on the job and was under the direction of Nelson. Whether or not he worked on a particular day depended of course upon the progress being made with the building by the other workers.

"We shall now consider the status of claimant Willard G. Murch. Murch, a carpenter, was hired by Mr. Warren in September, 1939 and was engaged in the construction of both stores and houses for the company until December, 1940, at which time he was laid off. He filed his claim January 20, 1941, and shortly thereafter was engaged to do some carpenter work at the home of one of the company's officers. He was so employed at the time of hearing.

"Work performed in house construction was under the supervision of Mr. Ralph Cunningham, while that in connection with the store buildings was directed by Mr. Nelson. Neither of these persons is an employer subject to the Act. Mr. Warren, however, visited these jobs each day and also directed the workmen in their activities. Murch, who was paid entirely on an hourly basis, received all his checks from the company.

"Mr. Warren's testimony is to the effect that both Nelson and Cunningham were building contractors and that all wages paid to the workmen by the company were eventually charged back to the contractors' accounts. Both Cunningham and Nelson, like all others, received part of their pay in cash and the balance was credited to the amounts they owed the company for the purchase of their homes. Most of the workmen were

engaged by Mr. Warren and employment preference was shown to those who were delinquent in their contract payments. The company also submitted reports and paid contributions under the Workmen's Compensation Act on all men employed at these jobs.

"Throughout the year 1937 the company's active salaried officers were Homer Hillman, president, and his brother, Charles Hillman, treasurer. A bookkeeper, Genevieve Rodgers, was also in the company's employ throughout that year. A number of other persons worked in 1937, but not during every week.

"During 1937 no less than five skilled workmen performed services for the company in twenty or more weeks under arrangements substantially the same as those made with the claimants."

In the case of *In re St. Paul & Tacoma Lbr. Co.*, 7 Wn. (2d) 580, 110 P. (2d) 877, we said, p. 593:

"We are constrained to hold that the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious."

Appellant does not claim that there has been any arbitrary or capricious administrative action, and the findings of the appeal examiner are supported by substantial evidence. The only question for determination, then, is whether the law has been correctly applied.

In support of its first contention, appellant argues that the claimants were purchasers under real estate contracts, with appellant as vendor, and, as such, were independent contractors performing their services away from the place of business of the company. Appellant cites *Washington Recorder Pub. Co. v. Ernst*, 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667, in support of its contention.

Since the claimants performed services for remuneration, they were employees of appellant within the

meaning of the act, unless it appears that they were exempt under the exceptions contained in Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317] (g) (5), which provides:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the director that:

"(i)   Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(ii)   Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(iii)   Such individual is customarily engaged in an independently established trade, occupation, profession or business, of the same nature as that involved in the contract of service."

It clearly appears that, as to each of the claimants, appellant either controlled and directed the performance of the services or had the right to do so under the contract of employment; hence, the first of the specified exemption tests has not been met. *Sound Cities Gas & Oil Co., Inc. v. Ryan,* 13 Wn. (2d) 457, 125 P. (2d) 246.

Moreover, to say the least, the contention that claimants performed their services outside the usual course of business or outside all the places of business of the appellant is of questionable merit. The business of appellant was essentially that of dealing in and selling real property. The building and improvement program which had been undertaken was necessary to the advantageous sale of appellant's properties. In fact, its managing agent, Mr. Warren, testified the program had become so important that, without it, scarcely any sales at all could be made. The claimants' services were ren-

dered in furtherance of that program and they were all performed in the buildings or on the premises of the appellant.

And, finally, it was not satisfactorily established that any of the claimants had been customarily engaged in an independent, established trade, occupation, or business involving the same kind of work which they contracted to do for appellant.

The exemption tests just discussed are stated conjunctively in the statute, and employment must be deemed to exist unless the person challenging the relationship establishes all three of them. *Sound Cities Gas & Oil Co., Inc. v. Ryan, supra; Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995. The fact that appellant had sold to each of the claimants a tract of land under a real estate contract did not alter or affect in any way the employer-employee relationship of the parties. That was merely an incidental manifestation of a policy pursued by appellant to obtain workmen for its enterprises and to facilitate the sales of its properties. Whether or not the relationship of employer and employee existed must be determined from the contract of employment and the attendant circumstances. The *Washington Recorder* case, upon which appellant relies, clearly is factually distinguishable and not applicable here.

The trial court did not err in sustaining the commissioner's determination that the claimants were employees within the meaning of the unemployment compensation act.

▪ Passing now to appellant's second contention, we think the trial court was correct in sustaining the commissioner's finding that appellant was an employer. The term "employer" is defined in § 19 (f) (1) of the act, p. 609 (Rem. Rev. Stat. (Sup.), § 9998-119 (f) (1)), as follows:

460

·· "Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week); . . ."

The commissioner found, and there is substantial evidence to support his finding, that there was a sufficient number of employees employed by appellant company for the requisite time to bring it within the act; hence, appellant was properly determined to be an employer.

Judgment affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

[No. 28768. Department Two. November 25, 1942.]

[1]Reported in 131 P. (2d) 148.