173 P.2d 101

**FIRST NAT. BEN. SOC. v. SISK et al.,
Employment Security Commission.**

No. 4805.

Supreme Court of Arizona.

Oct. 7, 1946.

Arthur M. Davis, of Phœnix, for appellees.

FARLEY, Superior Judge.

This is an appeal from a judgment of the Superior Court of Maricopa County affirming an order of the Employment Security Commission of Arizona requiring the appellant, First National Benefit Society, a corporation, to pay unemployment contributions on its insurance agents. The Commission's order requiring contributions pertained to the period beginning on January 1st, 1936, the effective date of the Unemployment Compensation Act, to June 16, 1941, when by statutory enactment insurance agents were specifically excluded from the provisions of the Unemployment Compensation law.

Appellant's agents, solicitors, or deputies, as they have been variously termed by the parties, solicit insurance prospects for the appellant, the First National Benefit Society, in accordance with one or more of three written contracts between the agent and the Society. By the terms of the contracts, all of which are similar, the agent agrees to solicit insurance for which he is compensated by retention of the initial membership fee and by payment to him of subsequent renewal commissions from the Society.

The pertinent portions of the contract, insofar as the issues here are concerned, provide that:

Robert R. Weaver, of Phœnix, for appellant.

4

Exhibit 1.

"2. It is hereby agreed that there are no requirements nor restrictions as to the time, amount of time, or energy expended by the deputy in connection with this Agreement."

"4. The said Deputy agrees to solicit and recommend for membership in the Society only persons who are in good health, of good moral character, and within the prescribed age limits, and whom he believes to be eligible and acceptable as members. That such recommendations for membership shall be accompanied by an application of the proposed member on forms to be furnished by the Society. The said Deputy agrees to send in or deliver all applications promptly and to make no misrepresentation in regard to the Society or its plan of operation. The Deputy further agrees to observe and adhere to the underwriting rules of the Society."

"7. The Society may designate territory in which the Deputy shall operate in accordance with its discretion. Any attempt by said Deputy to transfer or rewrite into any other company, society or association, any member of this Society, shall forfeit his renewal commissions. Failure on the part of the Deputy to comply with the terms of this contract shall absolve all future liability on the part of the Society."

"9. The Society shall at all times have the right to reject in its absolute discretion, any application for membership, without specifying cause of such rejection and the Deputy agrees in the event of rejection to refund all moneys collected from the applicant, within 10 days of the date of rejection."

"12. This Agreement supersedes any agreement whether oral or written, between the Society and the Deputy, and may be terminated by either party at any time upon written notice to the other, subject to the terms contained in the foregoing paragraph."

Exhibit 2.

"12. The Society may designate territory in which the Deputy shall operate in accordance with its discretion. The contract shall remain in force at the discretion of either party so long as this Society continues to operate as a burial or benefit society subject to the terms contained in the foregoing paragraphs. Failure on the part of the Deputy to comply with the terms of this contract shall absolve all future liability on the part of the Society."

"14. The Society shall at all times have the right to reject in its absolute discretion, any application for membership, without specifying cause of such rejection and the Deputy agrees in event of rejection to refund all moneys collected from the applicant, within 10 days of date of rejection."

Exhibit 3.

"7. * * * The contract shall remain in force at the discretion of either party so long as this Society continues to operate as a burial or a benefit society subject to

the terms contained in the foregoing paragraphs. * * *"

The Commission in its findings of fact determined that the Society was an employer subject to the Act, and that it was paying contributions due under such Act on remuneration of persons other than its soliciting agents. The Commission further found:

"Under the contract by the parties, the soliciting agent is free to exercise his own judgment as to the persons from whom he will solicit insurance, * * * The Society furnishes the soliciting agent standard forms, claim lists, sample policies, and other literature to be used in the performance of his duties. He is prohibited from using any such material other than that furnished him by the Society. The soliciting agent is not required to work exclusively for the company, and may devote either full time or part time to the selling of the Society's insurance premiums. The soliciting agent may (and some do) carry on other businesses of a complementary or competitive nature or of an entirely dissimilar nature. The soliciting agent may be limited as to territory at the discretion of the Society. * * * The soliciting agent is required by the Society to refund to the applicant the initial membership fee if the application is rejected by the Society for any reason. In the event the agent does not return to the applicant the refund premium, the company will refund the membership fee to the applicant and debit the agent's commission account by the amount of the refund.

"The contract may not be assigned by the soliciting agent, and may be terminated only by a breach of the terms of the contract on the part of either contracting parties or the contract may lapse due to inactivity on the part of the soliciting agent."

From such findings the Commission concluded that the agents were rendering services for the Society within the definition of the Unemployment Compensation Act and consequently the Society was liable for contributions. In this conclusion the Commission was sustained by the trial court.

The question here to be decided is whether such insurance agents were rendering services subject to the provisions of the Unemployment Compensation Act as it existed until June 16, 1941, under the definition of an employee found in Section 56-1019, A.C.A.1939 (now Section 56-1002, 1945 Supp.), which provides as follows:

"Services performed by an individual for wages * * * shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"1. Such individual has been and will continue to be free from control or direction over the performance of such serv-

**6**

ices, both under his contract of hire and in fact;

"2. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"3. Such individual is customarily engaged in an independently established trade, occupation, profession, or business * * *."

The language of the Arizona statute is similar to that contained in the unemployment compensation laws of most of the states of the Union. Nevertheless, considerable confusion has resulted because of the divergent interpretations handed down by courts throughout the nation. One line of cases follows the rule that the 1, 2, 3, provisions of Section 56-1019, supra, merely define the master and servant relationship as it existed at common law; while the other line of cases holds that such provisions of the statute extend the Unemployment Compensation Law to cover many individuals who are not classifiable within the common law master and servant relationship. We think the better-reasoned opinions follow the rule as stated in the case of Unemployment Compensation Commission v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d 584, at page 589:

"The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the Act evinces a studied effort to sweep beyond and to include by re-definition, many individuals who would have been otherwise excluded from the benefits of the Act by the former concepts of master and servant and principal and agent as recognized at common law. * * *"

which rule was quoted and approved in the case of Creameries of America, Inc., v. Industrial Commission, 98 Utah 571, 102 P.2d 300, and in the case of Life & Casualty Ins. Co. of Tennessee v. Unemployment Compensation Commission of Virginia, 178 Va. 46, 16 S.E.2d 357.

Counsel for both appellant and appellee are in general accord with respect to such interpretation, but appellant contends that its insurance solicitors meet all the qualifications of the exceptions contained in Section 56-1019, supra.

Does the record before this court support appellant's contentions: 1, that its agents are free from control; 2, that the service rendered by such agent is performed outside of all the places of business of appellant; and, 3, that such agents are customarily engaged in an independently established trade, occupation, profession, or business? This court held in the case of Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395, that all three

exceptions must concur. Therefore, our inquiry is determined if the record before this court reveals the existence of any one of such exceptions, and the burden is upon the employing unit (appellant) to show that its agents come within all three such exceptions. Unemployment Compensation Commission v. Jefferson Standard Life Ins. Co., supra. See also Industrial Commission v. Northwestern Mut. Life Ins. Co., 103 Colo. 550, 88 P.2d 560, 564, wherein it was said:

" * * * We, however, emphasize that an individual who seeks exemption must satisfy the commission that the services which are performed by others meet the requirements of all three tests, and that a failure to conform to any one of them is sufficient to create statutory 'employment,' and such an 'individual' is covered under the act."

To the same effect are the cases In re Foy, 10 Wash.2d 317, 116 P.2d 545, and Mulhausen v. Bates, 9 Wash.2d 264, 114 P.2d 995, and Sound Cities Gas & Oil Co. v. Ryan, 13 Wash.2d 457, 125 P.2d 246.

Appellant has urged most vigorously the proposition that one indicium of lack of control is the fact that the contract could not be terminated except for a breach thereof, which is a correct statement of law. Northern Oil Co. v. Industrial Commission, 104 Utah 353, 140 P.2d 329; L. B. Price Mercantile Co. v. Industrial Commission of Arizona, 43 Ariz. 257, 30 P.2d 491; Creameries of America, Inc., v. Industrial Commission, supra; Sound Cities Gas & Oil Co. v. Ryan, supra. However, the record before this court does not sustain appellant's position in that regard, nor for that matter does it support the findings of the Commission that the contract could not be terminated except for a breach thereof. Referring to Exhibit 1, we find the following:

"This Agreement supersedes any agreement whether oral or written, between the Society and the Deputy, *and may be terminated by either party at any time upon written notice to the other,* subject to the terms contained in the foregoing paragraphs." (Italics supplied.)

And again, in Exhibit 3:

" * * * The contract shall remain in force at the discretion of either party so long as this Society continues to operate as a burial or a benefit society subject to the terms contained in the foregoing paragraph. * * *"

Such provisions clearly granted to the Society the privilege of terminating the contract at will.

The record further discloses that in addition to the right to terminate the contract as indicated above, the existence of the following facts gave appellant the right to control its agents; the designation of territory in the discretion of the Society; the right to disapprove applications submitted by the agent without assigning reasons therefor; and the requirement that

8

the agent refund membership fees under such circumstances.

■ Although there is ample evidence that more than usual freedom of action was permitted appellant's agents, nevertheless it is clear the Society reserved to itself the right to control such agents. The question of control and direction is not a matter of degree, nor is it satisfied by some details with respect to which the solicitor may be free to exercise his own judgment. Industrial Commission v. Northwestern Mut. Life Ins. Co., supra.

■■ One of the means of ascertaining whether a right to control exists is the determination of whether, if instructions were given they would have to be obeyed. Fidelity & Casualty Co. v. Industrial Accident Commission, 191 Cal. 404, 216 P. 578, 43 A.L.R. 1304. Certainly it cannot be gainsaid that, if directed by the Society to solicit in a new territory, the agents would not be obligated under the contract to do so; nor that they would be obligated to return a membership fee if so directed by the Society even though no reason therefor were assigned.

■ Until the enactment on March 23, 1937, of Section 56-1019, supra, containing the 1, 2, 3 provisions, we think it clear that the services rendered by appellant's insurance agents were not within the common law definition of master and servant, and consequently the Society should not have been required to pay contributions prior to said date on such agents.

Section 56-1002, A.C.A. 1939 (1945 Supplement), as amended on June 16, 1941, specifically exempted insurance agents from the provisions of the Unemployment Compensation Law, and this court in the case of Washington National Ins. Co. v. Employment Security Commission, 61 Ariz. 112, 144 P.2d 688, so held. Consequently, appellant's liability for contributions should only cover the period beginning on March 23, 1937, to June 16, 1941.

■ Appellant contends that the Commission is bound by the ruling of the attorney for the Commission on August 19, 1937, exempting its agents from the benefits of the Unemployment Compensation Law. The answer to that contention is found in the case of Crane Company v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 662, wherein it was stated:

"This court has never held that insofar as a tax was concerned, the state may be estopped from the collection of a legal tax by reason of the action of any of its officers. The general rule is that the state will not be estopped in the collection of its revenues by an unauthorized act of its officers. In the matter of collecting revenues, the state is acting in its governmental or sovereign capacity, and ordinarily there can be no estoppel. Were this not the rule the taxing officials could waive most of the state's revenue. * * *"

To the same effect are the cases of La Societe Francaise, etc., v. ᴵCalifornia Employment Commission, 56 Cal.App.2d 534, 133 P.2d 47, and the Utah Hotel Co. v. Industrial Commission, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176.

 With respect to Assignment of Error No. 6 we think the burden of proof was upon the appellant to show to the satisfaction of the Commission which, if any, of its solicitors were not engaged in soliciting within the state of Arizona and in all other respects came within the exceptions to the definition of employment contained in Paragraph 6 of Section 56–1019, supra. An examination of the record indicates that it did not meet that burden of proof. Appellant has cited the case of Wolfe v. Bryant, 181 Tenn. 357, 181 S.W. 2d 343, to the contrary, but we are unable to attribute to that opinion any such holding. ·

The proposition that the Commission has imposed a tax upon interstate commerce is likewise not tenable in view of Section 1606, U.S.C.A. Int.Rev.Code, Title 26, which provides that:

"No person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the State law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce." International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

For the reasons stated, the judgment of the lower court is modified to the extent that appellant is not liable for contributions for the period from January 1st, 1936, to March 23, 1937, but in all other respects the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.

Judge A. T. LA PRADE being disqualified, the Honorable Gordon Farley, Judge of Superior Court of Santa Cruz ᴵCounty, was called to sit in his stead.