No. 88-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

LARRY'S POST COMPANY, INC.,

        Appellant,

   -vs-

UNEMPLOYMENT INSURANCE DIVISION,
CONTRIBUTIONS BUREAU,

        Respondent.

_____

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        C. Eugene Phillips; Murphy, Robinson, Heckathorn and
Phillips, Kalispell, Montana

    For Respondent:

        Karl Nagel, Dept. of Labor & Industry, Helena,
Montana

_____

Submitted on Briefs:  Feb. 3, 1989

Decided: July 18, 1989

Filed:

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Larry's Post Company, Inc. appeals from a judgment of the District Court of the Eleventh Judicial District, Flathead County, which affirmed the determination of the Board of Labor Appeals that services performed by individuals who contracted with Larry's to harvest timber constituted employment within the meaning of the unemployment insurance laws. We affirm.

Larry's raises the following issues on appeal:

1. Were the facts found by the appeals referee and adopted by the Board of Labor Appeals supported by the evidence?

2. Do the facts substantiate the finding of an employment relationship for the purpose of unemployment insurance?

Appellant Larry's Post Company, Inc. operated a post yard in Flathead County near Columbia Falls. It was engaged in the business of procuring, cutting, pointing, curing, treating and selling fence posts, poles and rails.

Larry's arranged with landowners to cut and remove timber from certain private properties. In exchange for the right to harvest timber, Larry's paid each landowner a stumpage fee.

When the right to harvest a particular tract was procured, Larry's contracted with woodcutters to cut and remove the timber. Tom Finch, whose claim for unemployment insurance benefits initiated this matter, contracted with Larry's to cut timber for approximately four weeks in 1986. Finch performed services for Larry's after quitting his job at the Superior Lumber Mill and while awaiting the completion

of contractual arrangements with the state of Montana to begin harvesting timber on state lands.

Although Larry's usually executed written contracts with its woodcutters, a written contract was not entered into with Finch. The evidence indicates, however, that Larry's dealt with Finch on the same terms that it dealt with woodcutters who signed written agreements.

Each cutting agreement granted the woodcutter the exclusive privilege of cutting post and pole timber from areas designated by Larry's. The woodcutter was required to conform to performance specifications stipulated by the contract, the landowner and statutes. Any failure to conform to these specifications constituted cause for termination.

The woodcutters were allowed to set their own hours. They could also provide services to others, although no evidence was submitted showing that any woodcutter was under contract with any other firm while under contract with Larry's.

The woodcutters were permitted to hire assistants or subcontract out all or part of the work. Tom Finch was assisted by his son, whom he paid for that assistance. However, no evidence was introduced regarding whether Finch or any other woodcutter paid employment taxes or whether they withheld taxes from the earnings of their assistants or subcontractors.

The woodcutters were permitted to sell to other buyers the timber cut under the contract with Larry's. When a woodcutter sold his posts and poles to another, he was obliged to pay stumpage fees to Larry's.

Larry's paid the woodcutters on a regularly scheduled basis—every two weeks—for cut posts and poles. All contractors were paid the same rate. The woodcutters did not

negotiate prices, nor was the work awarded on the basis of competitive bids. Certain costs, including stumpage fees paid to the landowner, were deducted from each woodcutter's paycheck.

The woodcutters provided their own transportation to and from the cutting site. They also furnished their own tools and equipment, usually a chain saw and other tools common to the woodcutting trade. However, if a woodcutter did not own the appropriate tools, he could rent them from Larry's. The rental cost was deducted from his paycheck.

Other than equipment and transportation, the woodcutters did not make a significant investment in the job. They did not purchase stumpage prior to harvest; they paid only for the stumpage they cut; they were under no liability if they were unwilling or unable to complete their contracts; they faced little opportunity for profit or loss other than their success or failure in performing efficiently.

Each contract provided that the agreement could be terminated at any time by either party. Tom Finch's agreement with Larry's ended in June, 1986, when the property on which he was working was sold by the landowner and was no longer available for timber harvesting. From that time until September, 1986, Finch was self-employed, buying stumpage and cutting timber on state lands.

In October, 1986, Finch filed a claim for unemployment insurance benefits. His claim was denied because he left the Superior Lumber Mill to engage in self-employment. In November, 1986, he sought a redetermination of the claim, this time including his earnings from Larry's as requalifying wages. The Unemployment Insurance Division then initiated an investigation, resulting in the Division's determination that, as the services performed by Finch for Larry's

constituted employment, he was eligible for unemployment insurance benefits.

In May, 1987, Larry's appealed the decision. A hearing was held before an appeals referee from the Department of Labor and Industry. The appeals referee also concluded that the work performed by Finch constituted employment.

In August, 1987, Larry's again appealed, this time to the Board of Labor Appeals. In the absence of a request for oral argument, the Board reviewed the matter and affirmed the referee's decision.

Larry's then sought judicial review of the determination. After briefing, the District Court dismissed the petition and affirmed the agency decision. Larry's appeals to this Court.

The standard of review of decisions by the Board of Labor Appeals is set out in § 39-51-2410(5), MCA, which provides in pertinent part:

> (5) In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

Thus, as mandated by statute, we are bound by those facts found by the Board of Labor Appeals that are supported by the evidence. "Supported by the evidence" means supported by substantial evidence, that is, more than a scintilla of evidence but less than a preponderance. Gypsy Highview Gathering Sys. v. Stokes (1986), 221 Mont. 11, 15, 716 P.2d 620, 623.

Larry's argues that several of the findings made by the appeals referee and adopted by the Board are not supported by the evidence. Specifically, Larry's refers to those findings in which the appeals referee stated that no evidence was

presented regarding certain matters. Larry's argues that "no evidence" is not the same as "substantial evidence" and cannot be the basis of any finding of fact.

The so-called "non-findings" that Larry's challenges are:

[1] [T]here was no evidence or testimony submitted showing that any woodcutter was ever under contract with any other firm while under contract with Larry's Post Company.

[2] [T]here is no evidence or testimony on the record that the woodcutters pay any employment taxes (workers' compensation, unemployment insurance, social security). Nor was any evidence or testimony submitted showing that the woodcutters withhold taxes from their assistants/subcontractors earnings.

[3] There is no testimony or evidence in the record showing that woodcutters post a hazard reduction bond as required by Section 76-13-408, et. seq., MCA.

[4] There was no evidence or testimony submitted showing that the woodcutters negotiated prices or that work is awarded on the basis of competitive bids.

These "non-findings" are especially pertinent to the present case. Each reflects an element indicative of an individual's status as an independent contractor. The appeals referee's finding of a lack of evidence on these points tends to demonstrate that an employment relationship existed between Larry's and the woodcutters.

Furthermore, Larry's, as the employer, had the burden of proving that the services performed by the woodcutters did not constitute employment. Section 39-51-203(4), MCA (1985). The very fact that Larry's neglected to introduce evidence indicating that the woodcutters were independent contractors--evidence showing that not only did the

woodcutters have an opportunity to work elsewhere, they actually did so; evidence showing that while the woodcutters occasionally had other individuals assist them, those individuals were actual employees of the woodcutters; evidence showing that the price of the posts was negotiated between two entities of similar bargaining power or that the contracts were awarded on the basis of competitive bids; evidence showing that the woodcutters were required to invest in hazard reduction bonds--established that Larry's failed to meet its burden. Under the circumstances, the challenged findings were appropriate.

Larry's next argues that the facts found by the appeals referee do not substantiate the finding of an employment relationship. Larry's contends that the facts establish that the woodcutters were independent contractors and, therefore, not covered by the unemployment insurance laws.

The formula for determining whether individuals are independent contractors or employees within the meaning of the unemployment insurance laws is commonly known as the ABC Test. The test is delineated in § 39-51-203(4), MCA (1985), which provides:

> (4) Service performed by an individual for wages is considered to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that:
>
> (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact;
>
> (b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(c) such individual is customarily engaged in an independently established trade, occupation, profession, or business.

Under the statute, employment is presumed. Before an individual will be deemed an independant contractor, elements of all three subsections of the statute must be proven. Pioneer Baseball League v. Friedricks (Mont. 1988), 760 P.2d 93, 95, 45 St.Rep. 1573, 1576; Standard Chem. Mfg. Co. v. Employment Sec. Div. (1980), 185 Mont. 241, 245, 605 P.2d 610, 613.

The first and most crucial element of the ABC test is the right of the individual who performs services to retain control and direction over his labor. Pioneer Baseball, 760 P.2d at 95, 45 St. Rep. at 1576. Control is necessarily implied in every contract that gives the employer the right to insist that services be performed according to specifications. St. Regis Paper Co. v. Unemployment Compensation Comm'n (1971), 157 Mont. 548, 553, 487 P.2d 524, 527. Evidence of Larry's control over the woodcutters was demonstrated by the written contracts, which enumerated several performance specifications. Further evidence of Larry's control was illustrated by testimony indicating that Larry's had the right to specify and change the size of the posts to be cut, depending on the orders the post company needed to fill. In addition, Larry's monitored the cutting area to assure that the woodcutters followed all stipulations. If a woodcutter failed to comply, Larry's could withhold from the woodcutter's pay any amounts necessary to bring the worker into compliance. Failure to comply could also result in dismissal.

Evidence of employment was also found in the method by which the woodcutters were paid. Larry's paid the woodcutters every two weeks for the number of posts cut,

rather than by the job. Moreover, each woodcutter was paid the same amount per post, in accordance with a price list attached to the written contract. The woodcutters did not negotiate the price to be paid per post, nor were the contracts awarded on the basis of competitive bids--both factors that, if present, would indicate an independent contractorship. See Pioneer Baseball, 760 P.2d at 95, 45 St.Rep. at 1576.

Further evidence of employment was indicated by the fact that the woodcutters continued their relationship with Larry's through a succession of jobs. Their contracts were not renewed each time they were granted a new area in which to cut--a factor that, if present, would point to independent contractorship.

Perhaps the most important indication that Larry's retained control over the woodcutters was the fact that the relationship between the two was terminable at will without liability on the part of either party. This fact signified the existence of an employment relationship. Kirby Co. of Bozeman v. Employment Sec. Div. (1980), 189 Mont. 1, 9, 614 P.2d 1040, 1044.

The above combination of factors demonstrated that Larry's retained control over the woodcutters, thereby establishing that their relationship was one of employment. As Larry's failed to establish the first leg of the ABC Test, we need not consider the remaining two branches. As noted earlier, if the employer fails to prove all three elements of the ABC test, the services performed will be considered employment.

Affirmed.

_William Smith_
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

_____
S. C. Gulbrandson

_____
Justices