ADVANCED SPORTS INFORMATION, INC., Appellant, v. BRETT NOVOTNAK; and NEVADA EMPLOYMENT SECURITY DEPARTMENT, NEVADA EMPLOYMENT SECURITY DIVISION, Respondents.

No. 28337

April 9, 1998                                        956 P.2d 806

*Hutchison & Steffen,* Las Vegas, for Appellant.

---

*Crowell, Susich, Owen & Tackes,* Carson City; *Brett Novotnak,* In Proper Person, Rockton, Illinois, for Respondents.

## OPINION

*Per Curiam:*

Respondent Brett Novotnak ("Novotnak") was terminated from his position as a sales representative for appellant, Advanced Sports Information ("ASI"). On March 31, 1994, Novotnak filed a claim for employee benefits with co-respondent, the Department of Employment, Training, and Rehabilitation, Employment Security Division ("Division"). Novotnak listed ASI as his employer.

ASI is a registered telemarketing service that sells advice, information and opinions regarding the probable outcome of sporting events. ASI is a sole proprietorship. Its sales representatives work on a commission basis pursuant to independent contract agreements.

After Novotnak filed his claim, the Division conducted an investigation and determined that ASI had not paid employment taxes. Specifically, the Division notified ASI that it was liable for unemployment insurance contributions for its employees.

On May 24, 1994, ASI appealed the Division's determination to the appeals officer, arguing that ASI was exempt from paying unemployment contributions for its salespeople under NRS 612.144, because they were direct sellers of products.

On June 19, 1995, after conducting a hearing, the appeals

officer entered his decision affirming the Division's determination that ASI was not exempt from paying unemployment insurance contributions.

On July 22, 1995, ASI appealed to the board of review. On August 11, 1995, the board of review declined further consideration of ASI's appeal.

On August 17, 1995, ASI filed a petition for judicial review in district court. On January 19, 1996, the district court denied ASI's petition for judicial review.

This appeal followed.

## DISCUSSION

At the time the Division notified ASI that it was liable for unemployment insurance contributions for its employees, NRS 612.144 provided:

"Employment" does not include services performed by a person who meets all of the following requirements:

1. Directly sells or solicits the sale of products, in person or by telephone:

(a) On the basis of a deposit, commission, purchase for resale or similar arrangement specified by the administrator by regulation, if the products are to be resold to another person in his home or place other than a retail store; or

(b) To another person from his home or place other than a retail store.

2. Receives compensation or remuneration based on his sales or the services he performs for customers rather than for the number of hours worked.

3. Performs pursuant to a written agreement with the person for whom the services are performed which provides that he is not an employee for the purposes of this chapter.

ASI maintains that under NRS 612.144, it is exempt from paying unemployment insurance contributions for its sales representatives because (1) they are direct sellers of products; (2) they work on a commission basis; and (3) they are employed pursuant to an independent contractor agreement.

The parties do not dispute the fact that ASI salespeople meet the second and third statutory criteria for exemption under NRS 612.144. The only question on appeal is whether the term "products," as used in NRS 612.144, encompasses intangible consumer services, such as ASI's sports advisory information service, in addition to tangible goods.

ASI argues that the language of NRS 612.144 is ambiguous and, therefore, the district court erred in affirming the hearing

officer's determination on the basis of the plain meaning rule. ASI notes that Nevada legislators as well as federal courts have recognized that the term "products" has no plain meaning. Accordingly, ASI argues that legislative intent, rather than the language of the statute, controls the issue in this case.

Division argues that the public policy rationale underlying Nevada unemployment compensation law demands that Nevada citizens should not be denied the protection of unemployment benefits unless clearly and unambiguously exempted by the legislature.

*Standard of Review*

This court is asked to interpret NRS 612.144, specifically the meaning of the term "products" as used therein. Statutory construction is a question of law which invites independent appellate review of an administrative decision. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993). Accordingly, this court's interpretation of NRS 612.144 is based on an independent, as opposed to a deferential, standard of review.

*Legislative History and Intent*

This court has held that the legislative intent underlying unemployment compensation statutes is " 'to provide temporary assistance and a measure of economic security for individuals who become involuntarily unemployed.' " State, Emp. Sec. Dep't v. Harich Tahoe, 108 Nev. 175, 178, 825 P.2d 1234, 1237 (1992) (quoting Airport Casino v. Jones, 103 Nev. 387, 390, 741 P.2d 814, 816 (1987)) (holding that NRS 612.133, concerning real estate salespeople, did not exempt respondent's time share sales agents). Although Nevada adopts a general presumption of covered employment, the compensation scheme is subject to areas of statutory exemptions, such as that created by NRS 612.144.

The legislative history underlying NRS 612.144 suggests that the legislature recognized that the definition of the term "products" as used in NRS 612.144 was unclear. During a Senate committee hearing, the following exchange occurred:

> Senator Glover questioned the definition of product. Mr. Gibb replied there are several definitions of product. Senator Robinson asked Mr. Gibb if he felt section one [of NRS 612.144] would be beneficial and clarify current statutes. Mr. Gibb replied it would resolve the problem of using NRS 612.085 to enforce the direct seller situation . . . [h]owever, it would create the problem of defining product.

Senate Committee Minutes on S.B. 238 Before Committee on Commerce and Labor, 62nd Leg. 141-142 (Nev. March 22,

1983). Although the legislature recognized the ambiguity surrounding the meaning of the term, it did not specifically define "products" anywhere in NRS chapter 612. Thus, the legislature did not explicitly include "intangible consumer services" within the purview of the term "products" as used in NRS 612.144. We can conclude that the word "product" as used in the statute is susceptible of two reasonable interpretations and is, thus, ambiguous. Therefore, a resort to principles of statutory construction is appropriate.

With regard to statutory construction, this court has stated that

"The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained will prevail over the literal sense. The meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and the policy of the law may also be involved to aid in its interpretation, and it should always be construed so as to avoid absurd results."

Moody v. Manny's Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994) (quoting Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637-38, 503 P.2d 457, 458-59 (1972)).

The legislative history indicates that NRS 612.144 was enacted in order to conform Nevada's unemployment compensation law with existing federal law. In its purpose and policy, NRS 612.144 is derived from 26 U.S.C. § 3508, which exempts direct sellers of "consumer products" from the status of employee. The only substantive difference between Nevada's statute and its federal counterpart is the reference to consumer products instead of, simply, products. However, we view this semantic difference as insignificant; thus, a review of the federal case law interpreting 26 U.S.C. § 3508 and with the phrase "consumer products," is appropriate.

When Nevada legislation is patterned after a federal statute or the law of another state, it is understood that "the courts of the adopting state usually follow the construction placed on the statute in the jurisdiction of its inception." Securities Investment Co. v. Donnelley, 89 Nev. 341, 347 n.6, 513 P.2d 1238, 1242 n.6 (1973). Two federal cases have interpreted the term "consumer products" as used in 26 U.S.C. § 3508—Cleveland Institute of Electronics, Inc. v. United States, 787 F. Supp. 741 (N.D. Ohio 1992) and The R Corporation v. United States, No. 92-1368-CIV-T-24B, 1994 WL 465819 (M.D. Fla. July 15, 1994).

In *Cleveland Institute,* an employer claimed that its salespersons were independent contractors under 26 U.S.C. § 3508 and

that it did not need to withhold any federal income tax from its salespersons' compensation. The court agreed and concluded that "[t]o find that this statute applies only to direct sellers of tangible goods will inevitably lead to disputes over whether a direct seller is selling goods or services" and thereby defeat the purpose of the statute. *Id.* at 749.

The court in *R Corporation* adopted the broad definition of consumer products announced by the court in *Cleveland Institute.* In *R Corporation,* plaintiff employer argued that the government erroneously assessed employment taxes against the corporation with regard to its salespersons. The salespersons in that case were performing door-to-door sales of cable television subscriptions and equipment, such as stereos and home computers. The *R Corporation* court agreed that the definition of "consumer products" in 26 U.S.C. § 3508 included intangible consumer services. *R Corporation,* 1994 WL 465819, at *4.

*Cleveland Institute* and *R Corporation* are legally and factually analogous to the case at bar because they interpret a federal statute very similar to NRS 612.144. These cases clearly indicate that the word "product" should include both tangible goods and intangible services.

*Language of the Statute*

NRS 612.144 does not contain a definition of the word "product," but a court may look to the entire statute, and even to related statutes, to construe an ambiguous or undefined word or term. *See* Colello v. Administrator, Real Est. Div., 100 Nev. 344, 347, 683 P.2d 15, 16 (1984) (stating that legislative intent can be determined by looking at the entire act and construing the statute as a whole in light of its purpose). NRS 612.144(2) provides that employment does not include services performed by a person who "receives compensation or remuneration based on his sales or the services he performs for the customers rather than for the number of hours worked." This clearly indicates that the legislature contemplated that the salesperson could be selling tangible goods, intangible services, or a combination of both, and this lends support to ASI's interpretation of the word "products."

## CONCLUSION

We conclude that the word "product" as used in NRS 612.144 encompasses both tangible goods and intangible services, and that ASI is exempt from paying unemployment contributions for its salespeople. Accordingly, we reverse the judgment of the district court, deny ASI's request for attorneys fees on appeal, and remand for further proceedings consistent with this opinion.