THE STATE OF NEVADA DEPARTMENT OF EMPLOYMENT, TRAINING AND REHABILITATION, EMPLOYMENT SECURITY DIVISION, APPELLANT, v. RELIABLE HEALTH CARE SERVICES OF SOUTHERN NEVADA, INC., RESPONDENT.

No. 31631

August 27, 1999                    983 P.2d 414

*Crowell, Susich, Owen & Tackes, Ltd.,* Carson City, for Appellant.

*Lionel, Sawyer & Collins* and *Dennis L. Kennedy* and *David N. Frederick,* Las Vegas, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

### SUMMARY

Whether temporary health care workers are covered employees within the purview of the unemployment compensation statutes is an issue of first impression. This issue arose after Mary Bolin (''Bolin''), a temporary health care worker employed by Reliable Health Care Services of Southern Nevada (''Reliable''), filed for unemployment benefits. Thereafter, the State of Nevada Department of Employment, Training and Rehabilitation, Employment Security Division (''ESD'') conducted an investigation, and ruled that Bolin and all other Reliable workers similarly situated (collectively hereinafter the ''Providers'') were employees of Reliable. An ESD Appeals Referee and the ESD's Board of Review (''the Board'') subsequently upheld this determination.

The district court, however, granted judicial review and reversed the Board's decision, concluding that the temporary health care workers were not employees pursuant to NRS 612.085, and thus were not entitled to unemployment benefits. Thereafter, ESD filed this timely appeal, arguing that the district court erred in reversing the Board's determination because it was supported by substantial evidence. We disagree. Accordingly, we affirm the order of the district court.

## FACTS

Most of the salient facts in this matter are not in dispute. Bolin was a trained respiratory technician, who had one year of formal training and two years of practical experience. Bolin possessed a current health card and some job-related equipment. Bolin had no insurance, no business license, did not advertise, and did not consider herself to be self-employed.

In January 1994, Bolin heard from a friend that Reliable was hiring respiratory technicians. Reliable is a temporary placement agency that refers health care workers to medical facilities. Reliable maintains a referral list of approximately forty to fifty Providers. Bolin went to Reliable's Las Vegas office, completed an application, and underwent a brief interview. Shortly after Reliable screened her application, Bolin began working for Reliable. Although Bolin had the option to work for other health care facilities or referral agencies, Bolin worked exclusively for Reliable. Bolin worked sporadically for Reliable from January 1994 to November 1996 and was paid $13.00 to $16.00 per hour. Reliable paid Bolin weekly and withheld no taxes from her paycheck. Reliable was required to provide Bolin with workers' compensation, general liability, and professional liability insurance.

Whenever Reliable wanted to refer Bolin, a Reliable representative would contact Bolin and give her the job location and a contact person. Bolin could refuse to accept a referral, and was allowed to trade shifts with other Providers without Reliable's permission. If Bolin opted to accept a referral, she would go directly to the job location, usually a health care facility such as a hospital, and her contact person would give her work instructions. Once at the facility, Bolin would sign in and out so that Reliable could track her hours. Bolin would also wear a Reliable identification badge bearing her picture.

In the summer of 1995, Bolin received few referrals from Reliable, and subsequently filed for unemployment. After conducting an investigation, ESD found that Bolin and the other Reliable respiratory therapists were Reliable's employees, and thus entitled to unemployment benefits. This finding was affirmed by the ESD referee, and thereafter by the Board.

In making its determination, the Board applied a three-prong test pursuant to NRS 612.085, finding that the Providers were employees because they were: (1) under Reliable's direction and control; (2) performing services in the course of Reliable's business; and (3) not engaged in an independently established trade or occupation. The district court, however, granted Reliable's petition for judicial review and reversed the Board's ruling, concluding that it was unsupported by the evidence presented. Alleging that the district court erred in making these conclusions, ESD filed this timely appeal.

## DISCUSSION

When examining a determination of an administrative agency, we recognize the narrow scope of our review. Specifically, we acknowledge that neither the district court nor the appellate court shall overturn an agency's determination of an employer-employee relationship pursuant to NRS 612.085 unless it is unsupported by substantial evidence.[1] *See* State, Emp. Sec. Dep't v. Harich Tahoe, 108 Nev. 175, 177, 825 P.2d 1234, 1236 (1992). We further acknowledge that there is a general presumption that a worker is an employee within the purview of the unemployment insurance system. Thus, unemployment statutes should be liberally construed in order to advance the protective purposes of Nevada's unemployment compensation system of providing temporary assistance and economic security to individuals who become involuntarily unemployed. *See id.; see also* Advanced Sports Information, Inc. v. Novotnak, 114 Nev. 336, 339, 956 P.2d 806, 808 (1998) (noting the legislative intent underlying the unemployment compensation statutes).

Although we are compelled to view administrative decisions with deference and liberally construe unemployment compensation statutes, this court will not sustain an agency determination that is clearly erroneous. Because we conclude that the Board's determination pursuant to NRS 612.085 was unsupported by the evidence presented and deviated from the applicable conjunctive statutory requisites, we affirm the district court order granting judicial review and reversing the Board's determination. In affirming the district court order, we hereby conclude that the sole inference that can be drawn from the salient facts presented is that the Providers were excluded from the unemployment compensation system because they were ineligible for benefits pursuant to NRS 612.085.

NRS 612.085 presumes that a worker is an employee covered by the unemployment compensation act unless three statutory requisites are proven:

> 1.   The person has been and will continue to be free from control or direction over the performance of the services, both under his contract of service and in fact;
> 2.   The service is either outside the usual course of the business for which the service is performed or that the service is

---

[1] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' " Bally's Employees' Credit Union v. Wallen, 105 Nev. 553, 556, 779 P.2d 956, 957 (1989) (quoting State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986)).

performed outside of all the places of business of the enterprises for which the service is performed; *and*

3. The service is performed in the course of an independently established trade, occupation, profession or business in which the person is customarily engaged, of the same nature as that involved in the contract of service.

NRS 612.085 (emphasis added). The aforementioned statute is conjunctive in nature, and thus the putative employer has the burden of proving all three criteria. *See id.* If a putative employer fails to meet even one statutory requisite, this court will deem it an employer for purposes of unemployment compensation.

With regard to the first statutory requisite, the district court properly concluded that there was no substantial evidence in the record to support the Board's finding that the Providers acted under Reliable's direction and control. The Board's finding that Reliable controlled the Providers was predicated upon the fact that Reliable chose which Providers were referred, dictated each Provider's hourly wage, and required the Providers to keep written time records. These circumstances are insufficient to support the Board's conclusion that Reliable controlled the Providers.

Indicia that characterize control in an employment relationship for purposes of NRS 612.085(1) include, but are not limited to, whether the employer has the right to direct the daily manner and means of a person's work, whether the worker is required to follow the putative employer's instructions, and whether the worker can refuse work offered without ramification. *See, e.g.,* Daw's Critical Care Registry, Inc. v. Department of Labor, Employment Sec. Div., 622 A.2d 622, 631 (Conn. Super. Ct. 1992); Larson v. LIRC, 516 N.W.2d 456, 461 (Wis. Ct. App. 1994); Trauma Nurses, Inc. v. Board of Review, New Jersey Dep't of Labor, 576 A.2d 285 (N.J. Super. Ct. App. Div. 1990); Mississippi Employment Sec. Dep't v. PDN, Inc., 586 So.2d 838 (Miss. 1991); First Nat. Benefit Soc. v. Sisk, 173 P.2d 101, 105 (Ariz. 1946); *cf.* Larry's Post Co., Inc., v. Unemployment Ins. Div. Contributions Bureau, 777 P.2d 325 (Mont. 1989).

In the present matter, the record is devoid of any of the aforementioned indicia. Reliable neither trained or instructed the Providers, nor had any other direct control over the method and means of the services performed by the Providers. Indeed, the district court properly noted that once the Providers had been assigned to a facility, there was virtually no contact between the Providers and Reliable with respect to performance of their jobs. Additionally, unlike a traditional employment relationship, the

Providers were free to decline any work offered by Reliable, to work for other employers or competing temporary agencies, and to substitute another Provider when they were unable to work. In essence, Reliable was merely a conduit for payment and did not supervise, instruct, or set work standards for its Providers. Accordingly, the district court properly concluded that there was insufficient evidence to support the Board's finding that Reliable controlled the Providers within the purview of NRS 612.085(1).

With regard to the second statutory requisite, the district court properly concluded that there was no substantial evidence in the record to support the Board's finding that the Providers worked in the usual course of Reliable's business pursuant to NRS 612.085(2). The Board's finding that the Providers' work was in the course of Reliable's business was predicated upon the fact that Reliable's sole source of revenue was derived from referring health care workers. This circumstance is insufficient to support the Board's findings.

Despite the fact that a temporary agency profits solely from referring temporary health care workers, we cannot ignore the simple fact that providing patient care and brokering workers are two distinct businesses. *Trauma Nurses,* 576 A.2d at 291; *see also Daw's,* 622 A.2d 630 (holding that an entity that provides health care personnel is not engaged in the same course of business as a health care provider who treats patients); *cf.* In re Hillman Inv. Co., 131 P.2d 160 (Wash. 1942) (holding construction workers were employees, in part, because without their services the employer would not profit). Indeed, we are convinced that the business of brokering health care workers does not translate into the business of treating patients for these purposes, and thus a temporary health care worker does not work in the usual course of an employment broker's business within the purview of NRS 612.085(2). *Id.*

Based on the foregoing analysis, it is clear that the Providers and Reliable work in two distinct businesses. The Providers are respiratory technicians who directly treat patients. In stark contrast, Reliable is a staffing company that profits from brokering workers; in brokering health care workers, Reliable does not treat patients. Therefore, on these undisputed facts, for the purposes of NRS 612.085(2), the work of the Providers was outside the usual course of the business of Reliable as a matter of law.

Additionally, we disagree with the Board's conclusion that a temporary placement agency's place of business is any location

where its workers have performed personal services. In fact, we are convinced that one cannot infer from the evidence presented that Reliable's places of business expansively include all health care facilities where it ever referred a worker. *See Daw's,* 622 A.2d at 635-36. A place of business is a place where workers perform tasks in pursuit of company profits. *See id.*

The record before us reveals that Reliable profits solely from brokering employees, a task likely performed by its non-Provider employees in its administrative office. Therefore, because Reliable profits solely from work performed in its administrative office, its sole place of business is this administrative office.

Finally, with regard to the third statutory requisite, the district court properly concluded that the Board erred in finding that the Providers were not professionals within the purview of NRS 612.085(3). The Board found that the Providers were not professionals because most of the indicia of an independent occupation were absent, as the Providers did not have a substantial capital investment in their work, did not possess business licenses, hire employees, or advertise their services. The mere fact, however, that members of an occupation opt not to become entrepreneurs will not render them non-professionals. *But see* Kirkpatrick v. Peet, 428 P.2d 405, 409 (Or. 1967) (equating professionalism with entrepreneurial risk). Rather, ''independently established professionals'' pursuant to NRS 612.085(3) are workers who have an identifiable occupation characterized by education, training, or a licensure requirement, and who work independently of their putative employer on their own behalf. *See Daw's,* 622 A.2d at 639 (holding that the term professionals include those workers who are licensed and educated); *see also* Vermont Securities, Inc. v. Vermont Unemployment Comm'n, 104 A.2d 915, 917 (Vt. 1954) (holding that one engaged in an independently established profession ''has a proprietary interest to the extent that he can operate it without hindrance from any individual whatsoever.'')

The evidence presented in the instant matter indicates that the Providers were ''independently established professionals'' pursuant to NRS 612.085(3) because respiratory therapy, the Providers' chosen occupational field, required an education, training, and a certification or license. Moreover, and most important, although some Providers opted to work exclusively for Reliable, other Providers chose to also work for competing temporary agencies or directly for health care facilities. These Providers considered themselves independent business people and operated without hindrance from Reliable. Accordingly, because the Providers' occupational pursuit existed independently of Reliable,

the Providers were independently established professionals for purposes of NRS 612.085(3).

## CONCLUSION

We agree with the district court that there was no substantial evidence in the record to support the Board's finding that the Providers were employees, and thereby entitled to unemployment compensation benefits. Moreover, in doing so, we conclude that the sole inference drawn from the undisputed facts presented is that the Providers were excluded from unemployment compensation, as the three conjunctive statutory requisites set forth in NRS 612.085 were satisfied. Accordingly, we affirm the order of the district court.[2]

SHEARING, AGOSTI and LEAVITT, JJ., concur.

ROSE, C. J., with whom BECKER, J., agrees, dissenting:

After reviewing the record on appeal, I conclude that the Board's determination that the Providers were "employees" pursuant to NRS 615.082 was supported by substantial evidence. Therefore, I must dissent from the majority's contrary conclusion. *See* State, Emp. Sec. Dep't v. Harich Tahoe, 108 Nev. 175, 177, 825 P.2d 1234, 1236 (1992) ("neither this court nor the district court may substitute its judgment or evaluation of the record developed at the agency level for that of the Board").

The relationship between Reliable and the Providers is best characterized as employer-employee. Reliable recruits, interviews, and screens each Provider applicant and, if qualified, hires them by sending them out on referrals. Upon hire, Reliable designates the time and location of the Provider's job and furnishes the Providers with Reliable identification badges, and with workers compensation, general liability, and professional liability insurance. *Cf.* Santiago v. Phoenix Newspapers, Inc., 794 P.2d 138, 144 (Ariz. 1990) (employer relationship more likely where employer provides tools and a specific area to work). Additionally, Reliable calculates the total hours worked by each Provider and issues them a weekly paycheck. *See* Trauma Nurses, Inc. v. Board of Review, New Jersey Dep't of Labor, 576 A.2d 285, 290 (N.J. Super. Ct. App. Div. 1990) (noting that "continuing payment represents some evidence of an employment relationship"). Finally, Reliable controls the work schedule of the Providers, as it may unilaterally decide to "terminate" them by ceasing to refer them to health care facilities. *See Santiago,* 794 P.2d at 144 ("The

---

[2]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal.

'right to fire' is considered one of the most effective methods of control'') (citations omitted).

The majority insists that the aforementioned characteristics are insufficient to support the Board's finding under NRS 612.085(1) that Reliable controlled the Providers because Reliable did not control the manner and means of the Providers' work. Under the majority's interpretation of NRS 612.085(1), however, the health care facility would likely be deemed the employer because it controlled the manner and means of the Providers' daily work. Practically speaking, this result is nonsensical because most health care facilities contract with referral agencies to avoid incidental costs associated with having employees, such as unemployment insurance charges. Through this contract with the health care facility, the referral agency steps in the shoes of the health care facility for employee-related liabilities. Likewise, the health care facility acts as Reliable's agent for the purpose of supervising the daily work of the Providers. *See* In the Matter of Nurse Care Registry, Inc., 154 A.D.2d 804, 805 (N.Y. App. Div. 1989) (where the referring organization controls billing and collection from clients, the client to whom the individuals are referred acts as an agent of the referral agency). Accordingly, because I am convinced that the health care facility acted as Reliable's agent in supervising the Providers, Reliable exercised sufficient control over the Providers to be deemed their employer pursuant to NRS 612.085(1).

Additionally, I disagree with the majority's conclusion pursuant to NRS 612.085(2) that the Providers did not work in the usual course of Reliable's business because the Providers and Reliable performed two distinct services, treating patients and brokering workers. I see no distinction between Reliable's and the Providers' business because the Providers' service—treating patients—is rendered in furtherance of Reliable's business of brokering temporary health care professionals. *See* In re Hillman Inv. Co., 131 P.2d 160, 163 (Wash. 1942) (holding that employees worked in the usual course of an entity's business where their services were rendered in furtherance of it). Indeed, Reliable's success as a referral agency is integrally dependent upon having Providers to refer to facilities to provide patient care services. In fact, the Providers are the essential core of Reliable's business because without Providers to refer, Reliable would not profit, and thus would likely cease to exist. *See Santiago,* 794 P.2d at 145 (considering whether worker was an ''integral part of the employer's regular business''). Accordingly, because the Providers comprise the essential core of Reliable's business, I conclude that the Providers work in the usual course of Reliable's business pursuant to NRS 612.085(2).

Several important policy considerations guide my interpretation of NRS 612.085(1)-(2). *See* Keeler v. LIRC, 453 N.W.2d 902, 904 (Wis. Ct. App. 1990) (noting that "factors are not to be mechanically applied, but analyzed in light of the public policy of more fairly sharing the economic burdens of unemployment . . . "). First, the unemployment statutes are to be liberally construed to effectuate coverage for workers who are economically dependent on others. *See* Advanced Sports Information, Inc. v. Novotnak, 114 Nev. 336, 339, 956 P.2d 806, 808 (1998); Larson v. LIRC, 516 N.W.2d 456, 461 (Wis. Ct. App. 1994). Thus, only those workers with separately established businesses, who are unlikely to be dependent on others, should be excluded. *See id.*

Second, referral agencies are in the best position to allocate the costs of unemployment insurance because they not only negotiate the contract rate with each health care facility, but also control the hourly wage paid to each worker. Referral agencies, therefore, can allocate the increased cost associated with unemployment insurance to the facility by increasing the contract rate or to the worker by decreasing the wage paid to each worker. Further, since a referral agency typically profits solely from brokering workers, it should be responsible for allocating the costs of its workers' unemployment, rather than placing this burden on society.

Accordingly, based on the foregoing analysis, I conclude that the Board's finding that the Providers were employees was supported by sufficient evidence. I would therefore reverse the order of the district court.