Calvin D. KEELER, d/b/a Cal's Logging, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Appellant.†

Court of Appeals

*No. 89-1323. Submitted on briefs December 7, 1989.—Decided
January 16, 1990.*

(Also reported in 453 N.W.2d 902.)

† Petition to review denied.

For defendant-appellant there were briefs by *Michael J. Mathis* of the *Department of Industry, Labor and Human Relations,* Madison.

For plaintiff-respondent there was a brief by *James L. Cirilli* of *Peterson, Cirilli, Moran & Gondik,* Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Labor and Industry Review Commission appeals the trial court's judgment and order reversing the commission's decision and remanding the matter to the commission to address various factual issues not addressed in the decision. The commission contends that substantial evidence supports its determination that certain woodcutters were employees of Calvin Keeler, d/b/a Cal's Logging, for unemployment compensation tax purposes. Because Cal's introduced sufficient evidence that the woodcutters were independent contractors, and not employees, we reject the commission's conclusion of law that Keeler failed to meet his burden of proof and affirm the trial court's reversal of

the commission's decision. We modify the trial court's judgment by eliminating its order of remand to the commission.

Calvin Keeler began doing business as Cal's Logging in 1984. Cal's would submit bids for the right to cut and remove standing timber located on various parcels of real estate. After a successful bid, Cal's would contract with woodcutters to cut the timber into standard sizes. The woodcutters then placed the cut timber on skids in order to move the timber to storage or a sawmill that had contracted with Cal's for the lumber.

Although contracts with landowners varied, they most often designated the number of cords to be cut and removed, the cutting boundaries and the time in which the cutting would be done. During 1984 and the first two quarters of 1985, eleven woodcutters performed services for Cal's. Each woodcutter signed a separate contract providing for payment based upon the number of cords of wood cut. The contracts provided that the woodcutters were independent contractors and not employees of Cal's Logging. Each woodcutter marked their initials on the timber they cut and Cal's would then compute their compensation. On some occasions contracts provided that Cal's and the woodcutter would share the proceeds equally after expenses were paid.

Each woodcutter furnished his own chainsaw, axe, pick, gas container, files, depth gauges and wedges. The approximate cost of the necessary equipment was between $600 and $700.

Keeler testified that some of the woodcutters hired their own employees to assist in the cutting. He further testified that while the woodcutters did not advertise their services, everyone knew whose services were available for woodcutting because of the limited number of persons in this industry. He further testified that wood-

cutting required specific skills beyond those of the average person.

Keeler testified that the woodcutters occasionally obtained cutting rights directly from landowners and other times offered their services to those who obtained the cutting rights. The record is silent as to the amount the woodcutters earned from other individuals or the degree of economic dependence of the woodcutters on Cal's Logging.

A determination as to whether an individual is an employee for unemployment compensation tax purposes involves a two-step analysis. *Transport Oil, Inc. v. Cummings,* 54 Wis. 2d 256, 262, 195 N.W.2d 649, 652 (1972). First, it is necessary to determine whether the alleged employee performed services for pay. *Id.* at 261, 195 N.W.2d at 652. The burden of proof that the individual was performing services for pay is on the department. If this is answered in the affirmative, the second step is to determine whether the individual is exempted by the provisions of sec. 108.02(12), Stats.[1] *Transport Oil,* 54 Wis. 2d at 262, 195 N.W.2d at 652.

On this issue, the burden is on the alleged employer to demonstrate that it lacked control and direction of the alleged employee and that the services were performed by individuals engaged in an independently established trade, business or profession. Sec. 108.02(12)(b)2, Stats. If the alleged employer fails to meet the burden of proof on either of these propositions, an employer/employee relationship will be found for unemployment compensation tax purposes.

---

[1]At the time of the *Transport Oil* case, sec. 108.02(12) was numbered 108.02(3). *Transport Oil* is applicable to current sec. 108.02(12).

The commission determined that the woodcutters did not perform their services under Cal's control and direction within the meaning of sec. 108.02(12)(b), Stats. The commission concluded, however, that Keeler failed to prove that the woodcutters were performing their services as part of an independently established trade and accordingly concluded that they were employees under sec. 108.02(12)(b)2.

We review the findings of the commission, not the trial court. *Liberty Trucking Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463–64 (1973). Though ordinarily a mixed question of fact and law, we conclude that the commission's determination that Keeler failed to bear his burden of proof is a conclusion of law because the facts here are uncontradicted. We review an agency's conclusions of law independently. *West Allis School Dist. v. DILHR,* 110 Wis. 2d 302, 304, 329 N.W.2d 225, 227 (Ct. App. 1982), *aff'd,* 116 Wis. 2d 410, 342 N.W.2d 415 (1984).

Because the commission found Cal's had no direction or control over the woodcutters' services, we need only determine whether the woodcutters were engaged in an independent trade to resolve the issue of the applicability of the unemployment compensation tax.

In determining whether the services were performed as an independently established trade or business in which the individuals were customarily engaged, we examine five interrelated factors. These factors are not to be mechanically applied, but analyzed in light of the public policy of more fairly sharing the economic burdens of unemployment for those economically dependent on another, not those who pursue an independent busi-

ness. *Princess House, Inc. v. DILHR,* 111 Wis. 2d 46, 61, 330 N.W.2d 169, 176–77 (1983). Those five factors are:

1. Integration. This factor is best explained by example as the court did in *Moorman Mfg. Co. v. Industrial Comm'n,* 241 Wis. 200, 5 N.W.2d 743 (1942). The court illustrated this factor by using the example of a tinsmith called upon to repair a company's gutters when the company is engaged in a business unrelated to either repair or manufacture of gutters. Because the tinsmith's activities are totally unrelated to the business activity conducted by the company retaining his services, the services performed by the tinsmith do not directly relate to the activities conducted by the company retaining these services and these services were therefore not integrated into the alleged employer's business.

2. Advertising or holding out. This factor cited in *Princess House,* 111 Wis. 2d at 46, 330 N.W.2d at 169, deals with the concept that a truly independent contractor will advertise or hold out to the public or at least to a certain class of customers, the existence of its independent business.

3. Entrepreneureal risk. The supreme court in *Princess House* noted that a truly independent businessman will assume the financial risk of the business undertaking. *Id.*

4. Economic dependence. If an examination of the economic relationship establishes that the alleged employee is independent of the alleged employer, performs services and then moves on to perform similar services for another, it is proof of an independent trade or business. On the other hand, if the economic relationship shows a strong dependence by the alleged employee on the alleged employer, the public policy behind the Unemployment Compensation Act

would suggest that the dependent person have access to unemployment compensation benefits. *Id.*

5. Proprietary interest. In *Transport Oil,* 54 Wis. 2d at 256, 195 N.W.2d at 649, the factor of whether the alleged employee had a proprietary interest in his business is used to determine whether the business was independently established. While the factor includes the ownership of the various tools, equipment, or machinery necessary in performing the services involved, it also includes the more sophisticated concept of proprietary control, such as the ability to sell or give away some part of the business enterprise.

The foregoing factors are guidelines established to assist in the analysis as to whether an employer/employee relationship exists. The weight given to the various factors and the importance of each varies according to the specific facts of each case.

■

An examination of the record discloses that Keeler testified to the following: woodcutting is a recognized and skilled trade; he had a specific understanding with the woodcutters that they were functioning as independent contractors and not employees; the woodcutters not only contacted Cal's for contracts but also frequently bid on cutting rights themselves and sold their services to other individuals who had secured cutting rights; the woodcutters employed individuals to assist them in the cutting; and the woodcutters looked to contracts for profit, not salary. There is no evidence that the woodcutters were economically dependent on Cal's for their livelihood. In fact, Keeler stated that if he were to go out of business, the woodcutters would find work elsewhere. We conclude that this evidence is sufficient to establish a prima facie case that the woodcutters were engaging in an independent trade or profession.

This does not mean that the commission was obligated to make such a finding. Indeed, had the commission rejected some of these facts based upon credibility, made competing inferences from other facts or weighed this evidence against contrary evidence and reached a contrary conclusion, its conclusion may well have been affirmed upon judicial review. Factual determinations by an administrative agency are reviewed under the deferential substantial evidence standard. *Robertson Transporting Co. v. Public Serv. Comm'n,* 39 Wis. 2d 653, 658, 159 N.W.2d 636, 638 (1968). However, the commission did none of these things. *See Hall Chevrolet Co., Inc. v. Wisconsin Dept. of Rev.,* 81 Wis. 2d 477, 260 N.W.2d 706 (1978); *Transport Oil,* 54 Wis. 2d at 263, 195 N.W.2d at 653. It simply concluded that Keeler had failed to carry his burden of proof. With nothing more, this is a conclusion of law with which we do not agree.

The evidence was sufficient to establish a prima facie showing that the woodcutters were acting as independent contractors. Accordingly, we affirm the trial court to the extent it reversed the commission's finding. However, we see no need for a remand to the commission. A court may, but is not required to, remand to an agency when the agency makes an error of law. Sec. 227.57(5), Stats. A reviewing court also has the power to set aside an agency's action when the agency erroneously interprets the law. *Id.* Because the commission had a reasonable opportunity to evaluate this evidence in light of the factors enumerated, but did not do so, we choose not to remand this matter to the commission and modify that portion of the trial court's order.

*By the Court.*—Judgment and order modified and as modified, affirmed, with costs to Plaintiff-Respondent.