FRED A. RISSER, Chairperson Senate Organization Committee
On behalf of the Senate Organization Committee you have requested my opinion on the following question:
 [H]ow must a company meet the criteria of [section] 108.02(12m) to be defined as an employe service company in order to make use of the provision of [section] 108.065?
Additionally, you list several different fact situations and ask for my opinion as to which of the situations, if any, would qualify a company as an employe service company.
Your question involves two separate but related statutory provisions for determining employer liability for employe service companies under the Wisconsin state unemployment compensation system. Section 108.02(12m), Stats., was created by the Legislature in 1987 and sets forth the criteria which a company must meet in order to be considered an employe service company. Section 108.02(12m) provides:
 EMPLOYE SERVICE COMPANY. "Employe service company" means a leasing company or temporary help service which contracts with clients or customers to supply individuals to perform services for the client or customer and which, both under contract and in fact:
 (a) Negotiates with clients or customers for such matters as time, place, type of work, working conditions, quality, and price of the services; *Page 155 
 (b) Determines assignments or reassignments of individuals to its clients or customers, even if the individuals retain the right to refuse specific assignments;
 (c) Sets the rate of pay of the individuals, whether or not through negotiation;
 (d) Pays the individuals from its account or accounts; and
 (e) Hires and terminates individuals who perform services for the clients or customers.
The other statutory provision, section 108.065, was created by the Legislature in 1987 to correct the existing lack of uniformity among determinations of which employe service companies were considered "employers" for state unemployment compensation (UC) purposes. Whether a service company qualified as an "employer" before section 108.065 was enacted was determined by using the statutory test in sections 108.02(12) and 108.02(13a). Section 108.065 thus carved out an exception and a different test to determine whether an employe service company qualifies as an "employer."[1] To be considered an "employer" under the statute, an employe service company must be taxed under the federal unemployment tax act (26 U.S.C. § 3301
to 3311). Section 108.065 states:
 Determination of employer. An employe service company is the employer of an individual who is engaged in employment performing services for a client or customer of the employe service company if the employe service company is taxed under the federal unemployment tax act (26 U.S.C. § 3301
to 3311) on the basis of that employment. *Page 156 
Whether a company qualifies as an employe service company under section 108.02(12m) and an employer under section 108.065 turns on how these sections are construed in pari materia. Statutory construction begins with an examination of the language used by the Legislature. State v. Denter, 121 Wis.2d 118, 357 N.W.2d 555
(1984). In Denter, the court held, "If the meaning of the statute is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper."121 Wis.2d at 123. See also State v. Derenne, 102 Wis.2d 38, 45,306 N.W.2d 12 (1981).
The language in section 108.02(12m) is clear and unambiguous on its face. The statute specifically defines an employe service company as "a leasing company or temporary help service which contracts with clients or customers to supply individuals to perform services for the client or customer." In addition, the statute requires the company to meet five conditions "both undercontract and in fact" in order to be considered an employe service company. See sec. 108.02(12m)(a)-(e), Stats.[2] There is nothing in this statutory language which indicates that there is an alternative method to *Page 157 
qualify as an employe service company in lieu of meeting the five conditions. Therefore, it is my opinion that all of the conditions in the statute must be fulfilled by a company claiming status as an employe service company.
With regard to section 108.065, the language also is clear and unambiguous on its face. Before an employe service company will be considered an "employer" of an individual, the employe service company must be "taxed under the federal unemployment tax act (26 U.S.C. § 3301 to 3311)" on the basis of that individual's employment. Thus, it is my opinion that the clear statutory language of section 108.065 mandates a company first qualify as an employe service company and then be taxed under the federal unemployment tax act in order to be considered an employer for state UC purposes.
Even if, as your request implies, the language and interrelationship between sections 108.02(12m) and 108.065 is ambiguous, the rules of statutory construction concerning legislative intent compel the same conclusion. (See MillerBrands-Milwaukee v. Case, 156 Wis.2d 800, 811, 457 N.W.2d 896
(Ct.App. 1990) and State v. Pham, 137 Wis.2d 31, 34,403 N.W.2d 35 (1987)). To ascertain legislative intent, the Wisconsin Supreme Court has allowed the use of extrinsic materials as interpretative aids including: "the scope, history, context, subject matter and purpose of the statute." Employers Ins. ofWausau v. Smith, 154 Wis.2d 199, 226, 453 N.W.2d 856 (Ct.App. 1990). The use of "the written comments of those involved in drafting the legislation" is also considered an appropriate aid in evaluating legislative intent. Robert Hansen Trucking, Inc. v.LIRC, 126 Wis.2d 323, 336, 377 N.W.2d 151 (1985). See also Statev. Barkdoll, 99 Wis.2d 163, 176, 298 N.W.2d 539 (1980); andMuench v. Public Service Commission, 261 Wis. 492, 510-11,53 N.W.2d 514, 55 N.W.2d 40 (1952).
The legislative purpose in enacting sections 108.02(12m) and108.065, and the comments in the statutes' drafting files, reinforce the conclusion that a company first must satisfy all of *Page 158 
the requirements under section 108.02(12m) in order to be considered an employe service company, and then must satisfy the requirements of section 108.065 in order to be considered an "employer."
In 1987, representatives of the leasing industry requested that the Legislature amend the existing UC laws to remedy problems within the state UC structure with regard to leasing companies and employe service companies. In response, the Legislature identified several problems and attempted to resolve these problems by, inter alia, enacting sections 108.02(12m) and108.065.
First, the Legislature concluded that there was a lack of a clear definition of an "employe service company" and a lack of a clear test to determine whether an employe service company was an employer. Wisconsin's existing statutory test not only determined whether an individual performing services for an employer was an employe of that employer, but also determined what employing unit was the employer (also known as the direction and control test).See sec. 108.02(12), Stats.
According to the comments made in the Legislative Reference Bureau analysis of sections 108.02(12m) and 108.065, and the comments made in the drafting record policy paper, the direction and control test did not adequately treat the issue of unemployment compensation liability for leasing companies and employe service companies.[3] In fact, when the test was applied to the leasing industry in Wisconsin, "the on-site employing unit — not the leasing company was in most but not all cases found to be the employer."[4] Given the lack of uniformity of the test, it was difficult for the Department of Industry, Labor and Human Relations, the state agency which *Page 159 
administers ch. 108, to determine whether a leasing company was an employer for state UC purposes.[5]
Second, a leasing company's "employer" status for state UC purposes was often different than its status for federal UC tax contributions.[6] This lack of coordination also impacted on the client of the leasing company. Sometimes the client was considered the employer for federal purposes but not for state purposes. Other times, the client was considered an employer for both federal and state purposes.
Also, it was suggested to the Legislature, in a memorandum concerning the policy of leasing firms in the drafting record, that the integrity of the state UC trust fund could be in jeopardy due to the existing lack of a clear definition and a clear test of employer status for leasing companies.[7] In addition, it was asserted that tax avoidance could result under existing laws. According to the memorandum, companies pay unemployment compensation into the fund based on experience with employment and unemployment.[8]
If a company which had a high UC tax rate created a leasing arrangement with a company which had a low UC tax rate, tax avoidance could result. Under this scheme, the high UC tax rate company would be designated as the leasing company and under the existing law, the company would probably not be considered the employer and not be subject to the UC tax. The company with the low UC tax rate, however, would be designated as the client company and under the existing law would probably be considered the employer and be subject to *Page 160 
the UC tax. Basically, a high tax rate company could stay in business but avoid paying the UC tax.
To resolve these problems and to satisfy the request of the representatives of the leasing industry that leasing companies be considered the employer for state UC purposes, the Legislature adopted sections 108.02(12m) and 108.065.[9] The effect of both statutory provisions is to exempt leasing companies from the direction and control test under section 108.02(12), to create a statutory definition of an employe service company and to create a method to determine employer status for UC purposes.[10] With respect to these objectives, in order to be considered an employer, an employe service company must be taxed under the federal unemployment tax act.[11] Because the leasing company is exempted from the direction and control test and has its own statutory method to determine employer status, it follows that strict compliance with the definitions and requirements of both sections 108.02(12m) and 108.065 is essential. In my opinion, the legislative history compels this conclusion.
In view of the above it is my opinion that none of the hypothetical fact situations you pose would likely qualify a company as an employe service company and the employer. Your first fact situation provides:
 Can the company declare itself to be an employe service company and obtain a binding ruling on its employes that work at clients['] locations that states that those employes are considered to be employes of the *Page 161 
employe service company for federal unemployment purposes? Is that sufficient to meet the definition under [section] 108.02(12m) and then invoke 108.065
making all of the employes covered under the Federal Unemployment Act its employes under the State Unemployment Act?
In my opinion, the company in this fact situation does not qualify as an employe service company. As indicated, based on the clear language of sections 108.02(12m) and 108.065 and the expressed legislative intent, a company must meet all of the criteria listed in section 108.02(12m) "in fact" to be considered an employe service company.
A company's declaration that it is an employe service company and a binding ruling that the employes who work at clients' locations are considered employes of the employe service company for federal unemployment purposes has no effect on meeting the statutory definition of section 108.02(12m). First, the clear statutory language states that a company can be considered an employe service company only if the company makes a factual showing with regard to the five conditions listed in section108.02(12m). Once the five conditions are met in section 108.02
(12m) and a company is considered an employe service company, a company may invoke section 108.065 only if the company is taxed under the federal unemployment tax act on the basis of the employment surrounding the employe service company. Only after conditions in section 108.065 have been met will a company be considered an "employer" for state UC purposes. To allow a company to circumvent the clearly stated requirements under sections 108.02(12m) and 108.065 obviously contravenes legislative intent.
Second, the fact that a company has a binding ruling making it, in effect, the "employer" for federal unemployment purposes has no bearing on whether a company is considered an employe service company for state UC purposes. The federal and state determinations of employer status for employe service *Page 162 
companies are separate and distinct. Just because a company is considered an "employer" for federal unemployment purposes does not necessarily mean that the state will consider the company an employer under section 108.065. To be considered an employer for state unemployment purposes under section 108.065, a company must be an employe service company as defined by section 108.02(12m) and then meet the additional requirements in section 108.065.
In the second fact situation, you ask:
 If the company can show that at least one employe meets the criteria listed under [section] 108.02
(12m), does that then qualify the company to use [section] 108.065 to assume sole liability for the State Unemployment for all its employes who have been determined to be its employes under the Federal Unemployment Act?
In my opinion it does not. Your question involves a two-step analysis. First, a company must meet all of the requirements of section 108.02(12m). Second, once the company is defined as an employe service company, the requirements of section 108.065 must be met.
In terms of section 108.02(12m) and the first step of analysis, I conclude that one employe's compliance with the five requirements, where there are several employes, does not automatically mean that the entire company qualifies under section 108.02(12m). The clear statutory language of section108.02(12m) states that a company must satisfy the five conditions "in fact." It therefore is apparent that the Legislature intended that the company make a factual showing with regard to all of its employes who are engaged in the type of employment contemplated in the statutory definition. If the Legislature had intended the factual showing to be satisfied by only one individual's compliance with the five conditions, it would have been clearly stated.
If, however, a company could meet all five conditions with all covered employes, the second step of analysis and section *Page 163 108.065 would be invoked. Section 108.065 provides that, "An employe service company is the employer of an individual who is engaged in employment performing services for a client or customer of the employe service company if the employe service company is taxed under the federal unemployment tax act (26 U.S.C. § 3301 to 3311) onthe basis of that employment." It is clear that the phrase "on the basis of that employment" refers to the individual's work which qualifies the company as an employe service company. If the federal government taxed the company on the basis of an individual's work not performed in connection with the employe service company, this would be outside the statutory provision of section 108.065. Thus, the employe service company would not qualify as an "employer" for state UC purposes because it would not meet the section 108.065 criteria.
This conclusion also accords with the expressed legislative purpose. As discussed earlier, one of the problems identified by the Legislature before adopting section 108.065 was the fact that the federal determination of employer status of an employe service company did not always coincide with the state determination of employer status for employe service companies. It is my understanding that sometimes the federal determination would make the client of the employe service company the employer while the state would determine the employe service company to be the employer. The requirement in section 108.065 that an employe service company be taxed under the federal unemployment tax act on the basis of an individual's employment with the employe service company before the state would consider the employe service company an employer, better ensures that the federal and state determinations would coincide. Thus, only when the federal government determines an employe service company to be the employer will the state recognize an employe service company as the employer. *Page 164 
You also ask whether a qualified employe service company could use the provisions of section 108.065 "to assume sole liability for the State Unemployment for all its employes who have been determined to be its employes under the Federal Unemployment Act?" Based on the above discussion, it is my opinion that an employe service company could qualify as an employer and assume liability for state UC taxes as long as the employe service company is taxed under the federal unemployment tax act on the basis of an individual's employment in connection with the employe service company. See sec. 108.065, Stats.
In your third fact situation, you ask:
 If the client, the employe, and the company all agree that the company is acting as the employe service company and the company has a binding Federal ruling to that effect, is that enough for the company to meet the definition of an employe service company which will then allow the company to make use of the provisions of [section] 108.065?
In view of the answers to your previous questions, I conclude that these facts, standing alone, would not qualify a company as an employe service company. As already indicated, a company must, at minimum, satisfy the criteria of section 108.02(12m) with a factual showing. An agreement between the client, the employe and the company that the company is acting as an employe service company and a binding federal ruling to that effect may or may not be relevant to meeting the specific requirements of section108.02(12m).
In the fourth fact situation, you ask:
 Does the fact that all agencies of both the State and Federal government, other than the Wisconsin Unemployment division, including the Wage and Hour Division and Workers Compensation Division, both operating under the same umbrella of the Department of Industry, Labor, and Human Relations, all recognize the *Page 165 
company to be the employer lend any weight to its meeting the definition of an employe service company which will allow the company to make use of the provisions of [section] 108.065?
Weight, yes; controlling effect, not necessarily. The fact that all agencies of both state and federal government except the Wisconsin unemployment compensation division recognize the company to be the employer, does not relieve the Wisconsin unemployment compensation division from its responsibilities under the statutes to determine employer status as an employe service company. First, notwithstanding the other federal and state agency determinations, the Legislature created specific statutory provisions to define an employe service company and to determine employer status for UC tax purpose. It is presumed that the Legislature was aware of the other agency statutes, such as workers' compensation, when sections 108.02(12m) and 108.065
were adopted in 1987. Kindy v. Hayes, 44 Wis.2d 301, 314,171 N.W.2d 324 (1969), citing Town of Madison v. City of Madison,269 Wis. 609, 614, 70 N.W.2d 249 (1955). Thus, the Legislature clearly intended for a company to comply with the specific statutory mandates in terms of unemployment compensation. Therefore, the other federal and state agency determinations have limited relevance with respect to the Wisconsin unemployment compensation division's application of the statutes to a given set of facts.
Second, the clear language of section 108.02(12m) requires that a factual determination be made that the five conditions are satisfied before the company can be considered an employe service company. Other agency determinations of employer status are not included within the required factual showing of section 108.02
(12m).[12] Thus, I conclude that a showing by the company of other agency determinations which found the *Page 166 
company to be an employer is not necessarily sufficient to meet the specific statutory requirements of section 108.02(12m).
Overall, it is my opinion that the unambiguous statutory language and the legislative history clearly set out the interrelationship between sections 108.02(12m) and 108.065 for unemployment compensation purposes. Section 108.02(12m) states the criteria which must be met in order for a company to be considered an employe service company. Once these requirements are met, a company can invoke section 108.065 which determines whether an employe service company qualifies as an employer for state UC purposes. It is clear that a company must satisfy all of the requirements in sections 108.02(12m) and 108.065 to be considered an employe service company and an employer.
JED:JDN
[1] For the history behind this legislation, see Draft,Employer Status in the Leasing Industry for UC Purposes
(hereinafter "Draft"), at 2-4, 6-7, Statute Drafting File to 1987 Act 255, LRB 5433/7, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wis.
[2] The employer-employe relationship has also been addressed by the courts in an analogous situation. The issue of whether an employer-employe relationship exists typically arises in cases involving independent contractors and workers' compensation. In order to determine whether an "employer-employe" relationship exists in the independent contractor situation for the purposes of state workers' compensation, the company and the individual must meet certain statutory qualifications. This has been characterized by reviewing courts as a question of fact. SeeUnited Way of Greater Milwaukee v. DILHR, 105 Wis.2d 447, 453,313 N.W.2d 858 (Ct.App. 1981).
Similarly, in the unemployment compensation situation, a company or an individual must meet certain statutory qualifications to be considered an employer or an employe. Cf.,Keeler v. LIRC, 154 Wis.2d 626, 453 N.W.2d 902 (Ct.App. 1990);Tri-State Home Improvement v. LIRC, 107 Wis.2d 748,322 N.W.2d 700 (Ct.App. 1982), aff'd, 111 Wis.2d 103, 104-05,330 N.W.2d 186 (1983); and Princess House, Inc. v. DILHR, 105 Wis.2d 743,314 N.W.2d 922 (Ct.App. 1981), aff'd, 111 Wis.2d 46, 49,330 N.W.2d 169 (1983).
[3] See Statute Drafting File to 1987 Wisconsin Act 255, LRB 5433/7, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wis. See also Draft, at 1 and 4.
[4] See Draft, at 1.
[5] Additionally, the representatives of the leasing industry requested that the law be changed so that the leasing company was considered the employer. See Draft, at 1.
[6] See Draft, at 8-10.
[7] See Memorandum, Policy Paper on Leasing Firms, at 1-2, Statute Drafting File to 1987 Wisconsin Act 255, LRB 5433/7, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wisconsin.
[8] Id., at 2-3.
[9] Section 108.02(12m) created by 1987 Wisconsin Act 255 § 5. Section 108.065 created by 1987 Wisconsin Act 255 §§ 34 and 44.
[10] See Statute Drafting File to 1987 Wisconsin Act 255, LRB 5433/7, Analysis by the Legislative Reference Bureau, at 1-2, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wisconsin. See also Draft, at 6-12.
[11] This provision was included to resolve the lack of coordination between the federal and state determinations of employer status with regard to leasing companies. See Draft, at 11.
[12] Whether administrative res judicata or collateral estoppel can be applied in a particular case is beyond the scope of this opinion. *Page 167