COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1951**

Cir. Ct. No. 2017CV3102

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

VARSITY TUTORS LLC,

PLAINTIFF-RESPONDENT,

V.

LABOR & INDUSTRY REVIEW COMMISSION,

DEFENDANT-APPELLANT,

DEPARTMENT OF WORKFORCE DEVELOPMENT
AND HOLLAND GALANTE,

DEFENDANTS.

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

¶1     DUGAN, J. The Wisconsin Labor and Industry Review Commission (LIRC) appeals the trial court's order reversing LIRC's determination that Holland Galante was an employee of Varsity Tutors LLC (Varsity), an online business that connects tutors with students.[1]  The trial court concluded that Varsity proved the minimum six out of the nine statutory conditions necessary to establish that Galante was an independent contractor—not an employee—pursuant to WIS. STAT. § 108.02(12)(bm)2.

¶2     On appeal, LIRC argues that Varsity failed to prove that Galante was an independent contractor because Varsity only proved two of the statutory conditions.  Therefore, LIRC asserts we should affirm its determination that Galante is an employee of Varsity.  We are not persuaded.  We agree with the trial court's conclusion that Varsity proved at least six out of the nine statutory conditions necessary to establish that Galante was an independent contractor.[2]  Therefore, we affirm the trial court's decision.

## BACKGROUND

¶3     Varsity utilizes a website to connect students with academic tutors in a variety of subjects.  In 2014, although Galante's primary employment was as a

---

[1]  LIRC's notice of appeal states that it appeals the trial court's August 28, 2018 decision that affirmed LIRC's March 17, 2017 decision in part, reversed in part, and remanded the matter to LIRC for further proceedings.  Our review of that decision is limited to rulings adverse to LIRC.  *See* WIS. STAT. RULE 809.10(4) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Because we agree with the trial court's conclusion, we need not address the three remaining statutory conditions that the trial court concluded Varsity did not prove.  *See* **State v. Castillo**, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (stating that appellate courts should resolve appeals "on the narrowest possible grounds").

2

research technologist, she entered into a contract with Varsity to tutor students as a "side job."

¶4     As a part of its standard vetting process, Varsity required that Galante take tests in the subjects for which she intended to provide tutoring services.  The tests confirmed that Galante was eligible to tutor in the chemical and biological sciences.  After Galante passed the exams, Varsity interviewed her online.  After the interview process was completed, Galante signed her contract with Varsity.

¶5     Pursuant to her contract with Varsity, Galante created an online profile with Varsity that included (1) her first name; (2) her test scores for the subjects in which she intended to provide tutoring services; (3) a personal statement; and (4) her photograph.  Varsity paid Galante $15.00 per hour for tutoring.  She used her own computer, materials, vehicle, equipment, and internet connection to provide tutoring services.  Varsity requires that tutors maintain a minimum level of automobile insurance if the tutor wants to drive to and from tutoring sessions.

¶6     Any student who wants tutoring services through Varsity purchases tutoring hours through Varsity's online platform.  Each time a student receives a tutoring session, Varsity charges the student's account.

¶7     Interested students browse tutor profiles on Varsity's website to aid them in selecting a tutor.  When a student was interested in being tutored by Galante, Varsity notified her electronically.  She then decided whether to accept, deny, or ignore the request.  If Galante accepted a tutoring request, then she and the student entered into a customized contract.  Each contract specified session dates and locations, materials that would be used, billing rates, and any additional

billable activities outside of tutoring. Tutors are not required to work a certain number of hours or maintain a minimum number of tutoring sessions.

¶8 Varsity does not provide any instructional content to tutors and does not assess the quality of the tutoring sessions. Varsity also does not provide any instructional training to tutors. Tutors are responsible for creating their own individualized lesson plans for each student and are not required to be licensed as teachers.

¶9 Varsity never provided Galante with a critique of her work performance. Although Varsity encouraged tutors to complete "session notes" about the tutoring sessions, it only retained the notes for advertising or marketing purposes. Although students were given the opportunity to rate their tutor after completing a session, Varsity did not use those ratings for any type of performance review. Further, Varsity did not assess any student's post-tutoring results.

¶10 Galante listed that she tutored for Varsity on her LinkedIn business profile.

¶11 In 2016, Galante applied for unemployment benefits. The Department of Workforce Development (DWD) determined that she was an employee of Varsity for purposes of unemployment benefits. LIRC affirmed DWD's findings with some modifications, and concluded that Galante performed services for Varsity as an employee and did not meet the relevant statutory criteria for an independent contractor.

¶12 Varsity filed an action seeking judicial review of LIRC's decision. In a written opinion, the trial court affirmed LIRC's decision in part, reversed in part, and remanded for further proceedings. The trial court found that Galante

provided services to Varsity. However, it further found that Varsity proved that Galante was an independent contractor within the meaning of the applicable statute. This appeal followed.

¶13 Additional relevant facts are included in the discussion section.

## DISCUSSION

¶14 The central issue on appeal is whether Varsity met its burden of proving that Galante was an independent contractor for purposes of unemployment compensation. LIRC argues that it correctly interpreted and applied WIS. STAT. § 108.02(12)(bm) when it concluded that Galante provided services for Varsity as its employee and not as an independent contractor.

### I.     Standard of review and substantive law

¶15 We review LIRC's decisions in unemployment insurance cases pursuant to WIS. STAT. § 108.09(7). *See Schiller v. DILHR*, 103 Wis. 2d 353, 355, 309 N.W.2d 5 (Ct. App. 1981). We review LIRC's decision, not that of the trial court, *see Virginia Surety Co., Inc. v. LIRC*, 2002 WI App 277, ¶11, 258 Wis. 2d 665, 654 N.W.2d 306, although we may benefit from the trial court's analysis, *see Heritage Mutual Insurance Co. v. Larsen*, 2001 WI 30, ¶25 n.13, 242 Wis. 2d 47, 624 N.W.2d 129.

¶16 In reviewing LIRC's decision, we "may not set aside an order or award unless 'the findings of fact by [LIRC] do not support the order or award.'" *See id.*, ¶24 (citation omitted). Furthermore, "findings of fact made by [LIRC] acting within its powers shall, in the absence of fraud, be conclusive," and this court "shall not substitute its judgment for that of [LIRC] as to the weight or credibility of the evidence on any finding of fact." *See id.*

5

¶17    We review LIRC's "conclusions of law under the same standard [that] we apply to a [trial] court's conclusion of law—*de novo*." *See **Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21 (italics added).[3]  Although we no longer defer to administrative agency decisions, we give those decisions "due weight[.]"   *See **id.**, ¶78.   "Due weight is a matter of persuasion, [and] not [one of] deference"; it does not "oust the court as the ultimate authority or final arbiter"; and it affords "respectful, appropriate consideration" of LIRC's determination and also affords us "independent judgment in deciding questions of law." *See **id.** (quotation marks omitted).

¶18    WISCONSIN STAT. § 108.02(11) states that "[a]n employee shall be deemed 'eligible' for [unemployment] benefits for any given week of the employee's unemployment[.]"  An employee is defined as "any individual who is or has been performing services for pay for an employing unit[.]"   *See* § 108.02(12)(a).  The following exception to the definition of employee is set forth in § 108.02(12)(bm):

> Paragraph (a) does not apply to an individual performing services for an employing unit … if the employing unit satisfies the department that the individual meets the conditions specified in subds. 1. and 2., by contract and in fact:
>
> 1. The services of the individual are performed free from control or direction by the employing unit over the performance of his or her services.…[4]

---

[3]  In ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21, our supreme court ended the practice of Wisconsin courts "deferring" to the conclusions of law of administrative agencies, such as LIRC.

[4]  LIRC agrees that Galante's services were performed free from Varsity's control or direction.  *See* WIS. STAT. § 108.02(12)(bm)1.  Therefore, we need only address whether Varsity proved that Galante met at least six of the nine conditions set forth in § 108.02(12)(bm)2.

. . . .

    2. The individual meets 6 or more of the following conditions:

    a. The individual advertises or otherwise affirmatively holds himself or herself out as being in business.

    b. The individual maintains his or her own office or performs most of the services in a facility or location chosen by the individual and uses his or her own equipment or materials in performing the services.

    c. The individual operates under multiple contracts with one or more employing units to perform specific services.

    d. The individual incurs the main expenses related to the services that he or she performs under contract.

    e. The individual is obligated to redo unsatisfactory work for no additional compensation or is subject to a monetary penalty for unsatisfactory work.

    f. The services performed by the individual do not directly relate to the employing unit retaining the services.

    g. The individual may realize a profit or suffer a loss under contracts to perform such services.

    h. The individual has recurring business liabilities or obligations.

    i. The individual is not economically dependent upon a particular employing unit with respect to the services being performed.

¶19 Statutory interpretation is a question of law. *See **Bank Mut. v. S.J. Boyer Constr. Inc.***, 2010 WI 74, ¶21, 326 Wis. 2d 521, 785 N.W.2d 462. Courts give effect to the language of a statute when interpreting it. ***State ex rel. Kalal v. Circuit Ct. of Dane Cty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with interpreting the language within the statute

and if the meaning is clear, we stop the inquiry. *See id.* "Statutory language is given its common, ordinary, and accepted meaning[.]" ***Id.***

¶20    This court assumes that the legislature says what it means and means what it says. *See **Heritage Farms, Inc. v. Markel Ins. Co.***, 2009 WI 27, ¶14 n.9, 316 Wis. 2d 47, 762 N.W.2d 652; *see also **Ball v. District No. 4, Area Bd. of Vocational, Tech. & Adult Educ.***, 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984) (stating that "[t]he ... presumption is that the legislature chose its terms carefully and precisely to express its meaning").

## II.    Varsity met its burden of establishing that Galante was an independent contractor

¶21    In order to establish that Galante was an independent contractor for purposes of unemployment compensation benefits, Varsity had to prove that Galante met six of the nine conditions set forth in WIS. STAT. § 108.02(12)(bm)2. LIRC agrees that Galante met the following two conditions:   (1) Galante performed her tutoring services in a location chosen by her and used her own materials; and (2) Galante was obligated to redo unsatisfactory work for no additional compensation or was subject to a monetary penalty for unsatisfactory work. *See* §§ 108.02(12)(bm)2.b. & e.  However, LIRC contends that Varsity did not meet its burden of proving that Galente satisfied four or more of the other statutory conditions required to establish that she was an independent contractor. We address each of the four remaining conditions that the trial court found Varsity had proved, in sequence.

### A.  Galante advertised she was a business

¶22    LIRC argues that Varsity failed to establish that Galante advertised herself as a tutor with the aim of attracting students to her tutoring business

because she did not have business cards, did not publish newspaper notices, did not have a physical business place, and did not promote her tutoring services other than through Varsity's website. LIRC argues that although Galante completed an online tutoring profile on Varsity's platform, the webpage is related to Varsity's business, not any independent business of Galante.

¶23 Pursuant to WIS. STAT. § 108.02(12)(bm)2.a., Varsity must prove that Galante "advertises or otherwise affirmatively holds … herself out as being in business." In *Ebenhoe v. Lyft, Inc.*, UI Dec. Hearing No. 16002409MD (LIRC Jan. 20, 2017), LIRC concluded that the driver for the Lyft ride sharing mobile application had satisfied the advertisement condition because his availability as a driver was accessible on both the Lyft and Uber mobile applications.[5]

¶24 LIRC attempts to distinguish *Ebenhoe*. It argues, based upon the nature of the internet based ride sharing business, the mobile applications were the only avenues available for the driver to advertise his transportation services, whereas Galante could have advertised her tutoring services in a number of other ways.[6] We are not persuaded.

¶25 The trial court found that as a digital platform—a business model nearly identical to that of Lyft or Uber—Varsity merely provides a way for

---

[5] Although LIRC's decisions are not binding authority, we may consider prior LIRC decisions on review. *See, e.g.*, *Gilbert v. LIRC*, 2008 WI App 173, ¶10, 315 Wis. 2d 726, 762 N.W.2d 671.

[6] In a footnote, LIRC also briefly argues that its application of the statutory employee test in *Ebenhoe* constituted an alternative basis upon which to resolve the issue of whether the driver was an employee of Lyft. *See Ebenhoe v. Lyft, Inc*., UI Dec. Hearing No. 16002409MD (LIRC Jan. 20, 2017). However, LIRC does not develop this argument and, therefore, we decline to further address it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

students who want to be tutored to connect to qualified tutors. We agree. By advertising herself as a tutor on Varsity's online platform, Galante affirmatively held herself out as being in the business of tutoring. Thus, we conclude that the advertising condition has been met.

> B. *Galante incurred the main expenses related to the tutoring services she performed under her contract with Varsity*

¶26   LIRC argues that Varsity incurred the main expenses as opposed to Galante because Galante relied on materials that she already owned and, although she paid for her own internet, phone, and car insurance, these costs were not specifically related to her tutoring services. Further, LIRC argues that Varsity incurred expenses on behalf of Galante, such as those associated with recruiting and vetting qualified tutors; operating an online platform; matching qualified tutors and interested students; and managing its online system.

¶27   We disagree. We conclude that Galante, not Varsity, incurred the main expenses associated with the tutoring services that she performed. Varsity did not incur any specific expenses attributable to Galante's services. Varsity did not teach or train Galante how to tutor; Varsity did not cover the cost of educating Galante so that she could qualify as a tutor; Varsity did not incur any transportation expenses associated with Galante's in-person tutoring sessions; and Varsity did not incur any incidental expenses for tutoring students such as books or other materials.

¶28   Moreover, Varsity's contract with Galante expressly states "[t]he Company shall not be responsible for nor shall it reimburse Tutor for any expenses Tutor incurs in providing the Services[.]" The foregoing provision is consistent with the trial court's finding that Galante was required to furnish, at her own

expense, worksheets, curriculum, textbooks, writing supplies, and academic enhancement materials for her students.

¶29     We further note that LIRC has held that the only expenses relevant to this inquiry are those necessary to perform the actual services of the individual and not those relating to other costs outside of what the individual was contracted to perform.  *See* ***J. Lozon Remodeling***, Hearing No. S9000079HA (LIRC Sept. 24, 1999) (concluding that the cost of procuring siding materials was not relevant to the analysis of expenses borne by an individual who installed siding and occasionally also installed windows or performed miscellaneous other services for a remodeler).  Applying the reasoning of ***Lozon***, the expenses that Varsity incurred for recruiting and vetting qualified tutors; operating an online platform; matching qualified tutors and interested students; and the costs relating to managing its online system are not related to the actual services that Galante performed.  Thus, we conclude that Varsity proved this condition—Galante  incurred the main expenses for tutoring students under her contract with Varsity.

*C.  Galante performed services that do not directly relate to Varsity's business of connecting students with tutors through its digital platform*

¶30     The next condition at issue is whether the services Galante performed directly relate to Varsity as the employing unit retaining the services.  *See* WIS. STAT. § 108.02(12)(bm)2.f.  LIRC argues that Galante's tutoring services were "completely integrated" into Varsity's business of providing and locating academic support, and that her services were not tangential to that business.  It argues that, for example, Galante did not clean Varsity's offices or cater luncheons for Varsity executives.

11

¶31 We previously held that the condition of integration is best explained by:

> the example of a tinsmith called upon to repair a company's gutters when the company is engaged in a business unrelated to either repair or manufacture of gutters. Because the tinsmith's activities are totally unrelated to the business activity conducted by the company retaining his services, the services performed by the tinsmith do not directly relate to the activities conducted by the company retaining those services, and those services were, therefore, not integrated into the alleged employer's business.

*See **Keeler v. LIRC***, 154 Wis. 2d 626, 633, 453 N.W.2d 902 (Ct. App. 1990).

¶32 Here, the record does not support LIRC's assertion that Galante's services were integrated into Varsity's online business of connecting students with tutors. Varsity generates revenue by facilitating business relationships between students and tutors. However, that does not transform Varsity's business into a tutoring business. As stated, Varsity's business provides a digital platform to connect students who want to be tutored with qualified tutors who want to teach them.

¶33 We conclude that Galante's tutoring services are not directly related to Varsity's business of facilitating tutorial relationships through its online platform. Varsity is an entity that connects students who want tutoring with people who want to provide tutoring services. In ***Keeler***, we held that activities that do not relate to the "activities conducted by the company retaining [those] services … [are,] therefore, not integrated[.]" *See **id.*** Galante's services are similar to those described by the tinsmith example. *See **id.*** Galante provided tutoring services—an activity separate from Varsity's business of being an online platform that connects students with tutors. Although Varsity has an online platform to assist students with academic support, Varsity itself does not provide

12

any tutoring services. Additionally, Varsity does not teach or train tutors how to tutor the students. It also does not assess the quality of the tutoring sessions or critique the tutor's performance. Further, Varsity does not assess any student's post-tutoring results.

¶34 In contrast to Varsity's business of providing a digital platform to connect students and tutors, Galante tutors students. Like all the tutors who connect with students through Varsity, Galante created her own individualized lesson plans for each student. She chose and paid for whatever materials would be used during tutoring sessions and the dates and locations of those sessions. Galante, not Varsity, incurred transportation expenses associated with her in-person tutoring sessions and any incidental expenses for tutoring students such as a computer, internet connection, equipment, books or any other materials.

¶35 Thus, we conclude that Varsity met its burden of establishing this condition—Galante's tutoring services are not integrated with Varsity's services.

### D. Galante had recurring business liabilities and obligations

¶36 The next condition that Varsity had to prove was that Galante had recurring business liabilities and obligations. *See* WIS. STAT. § 108.02(12)(bm)2.h. LIRC interprets this condition as including overhead expenses—for example, membership dues, liability insurance, and other recurring business costs. LIRC argues that this condition "must be met for business purposes alone" and states that there is no evidence to suggest that Galante's automobile insurance was purchased specifically so she could tutor students. It also argues that Galante's automobile insurance was for personal purposes and was not intended to be a recurring business obligation.

¶37 We disagree. Under her contract with Varsity, Galante was required to maintain a specific level of auto insurance. The requirement of the auto insurance qualifies as a recurring business liability and obligation, and that requirement is sufficient to fulfill this condition. In *Quality Communications Specialists Inc.*, Hearing No. S0000094MW (LIRC July 30, 2001), LIRC held "the recurring obligation to pay premiums for insurance which must be maintained in order for the individual to be able to perform their services under the contract … fit[s] within the intended meaning of the phrase, 'recurring business liabilities or obligations.'" Thus, we conclude that Varsity established that Galante's auto insurance qualifies as a recurring business liability and obligation.

## CONCLUSION

¶38 In summary, we conclude that Varsity proved that Galante met at least six of the nine statutory conditions to qualify as an independent contractor pursuant to WIS. STAT. § 108.02(12)(bm)2. As previously noted, LIRC stipulated that Galante met two of the nine conditions because (1) Galante performed her tutoring services in a location chosen by her and used her own materials; and because (2) Galante was obligated to redo unsatisfactory work for no additional compensation or was subject to a monetary penalty for unsatisfactory work. As discussed above, Varsity proved that (1) Galante advertised or otherwise affirmatively held herself out as being in business; (2) Galante incurred the main expenses related to her tutoring services; (3) Galante performed services that did not directly relate to Varsity's business of facilitating relationships between tutors and students through its digital platform; and (4) Galante had recurring business liabilities or obligations. Therefore, we conclude that LIRC erred when it concluded that Varsity had not proven at least six statutory conditions required to

establish that Galante was an independent contractor.[7]  For the reasons stated above, we affirm the trial court's order.

By the Court—*Order affirmed.*

Not recommended for publication in the official reports.

---

[7] Varsity also argues that Galante was not an employee of Varsity as that term is defined in WIS. STAT. § 108.02(12)(a), because she did not provide "services for" Varsity and, therefore, she was not entitled to unemployment compensation.  However, § 108.02(12)(bm) provides that § 108.02(12)(a) does not apply to an individual who falls within paragraph (bm), which includes independent contractors.  Because we decide that Galante was an independent contractor pursuant to § 108.02(12)(bm), we need not address this argument.