No. 96-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


PHOENIX PHYSICAL THERAPY,

Petitioner and Appellant,

v.

UNEMPLOYMENT INSURANCE DIVISION,
CONTRIBUTIONS BUREAU,

Respondent and Respondent.



APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Regan Whitworth, Balyeat Law Offices,
Missoula, Montana

For Respondent:

Kevin Braun, Special Assistant Attorney General;
Department of Labor and Industry; Helena, Montana



Submitted on Briefs: May 1, 1997

Decided:   August 1, 1997
Filed:


_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

Phoenix Physical Therapy appeals the decision of the Fourth Judicial District Court, Missoula County, affirming a decision of the Board of Labor Appeals. We affirm.

The issue is whether the District Court erred in affirming the decision of the Board of Labor Appeals which determined that Gail Nevin was an employee of Phoenix Physical Therapy.

### FACTUAL BACKGROUND

Phoenix Physical Therapy ("PPT") is engaged in the business of providing physical therapy services to patients on an individual basis. PPT is owned and operated by Janet Hulme, a physical therapist. On July 1, 1990, Hulme and Gail Nevin, another physical therapist, entered into a "Contract for Rental of Facilities and Administrative Services." The term of the agreement was from July 1, 1990, through December 31, 1991. Either Hulme or Nevin could terminate the agreement with thirty-days written notice. The contract did not indicate that either party had any liability for breach of the contract.

In the contract, PPT was to provide treatment facilities, client billing, and secretarial services for Nevin. Nevin was to provide scheduling instructions to the secretary, patient treatment, and client record keeping. She was to pay fifty percent of the fees she earned to PPT. The fees collected for Nevin's services were deposited in PPT's business account. Each month, PPT made payments to Nevin out of the business account based upon fifty percent of the fees generated by Nevin.

In November 1991, the Unemployment Insurance Division ("UID") of the Montana Department of Labor and Industry conducted a random audit of PPT. Based on that audit, UID determined that Nevin was an employee of PPT.

PPT contested UID's determination. A hearing was conducted to determine Nevin's status. The appeals referee determined that the services provided to PPT by Nevin from July 1, 1990 through October 1, 1991, were performed as an employee pursuant to 39-51-203, MCA. PPT appealed that decision to the Montana Board of Labor Appeals. The Board affirmed the appeals referee's decision.

PPT appealed the Board's decision to the Fourth Judicial District Court, Missoula County. The District Court reviewed the record and remanded it back to the Board on the issue of whether the Board reviewed the record in its entirety as required by law. After review by the Board on remand, the District Court was satisfied that the record was considered in its entirety and thus affirmed the Board's finding that Nevin was an employee of PPT. PPT now appeals the decision finding that Nevin was an employee of PPT.

### DISCUSSION

Did the District Court err in affirming the decision of the Board of Labor Appeals that Gail Nevin was an employee of Phoenix Physical Therapy?

PPT argues that PPT and Nevin intended to operate two independent practices, sharing facilities. To accomplish this, they entered into an agreement in writing in which PPT agreed to provide facilities and administrative services to Nevin, and Nevin agreed to pay to PPT fifty percent of her collected fees. PPT asserts that Nevin is neither an employee of PPT nor an independent contractor working with PPT. PPT contends that UID must abide by PPT's and Nevin's mutual intention that they intended an office sharing arrangement between two independent contractors. In the alternative, PPT argues that if UID did not agree with their mutual intention to operate two independent practices, then Nevin should have been found to be an independent contractor and not an employee.

The Montana Legislature has strictly limited the scope of judicial review of the decisions of the Board of Labor Appeals. Under  39-51-2410(5), MCA, factual findings of the Board are conclusive if they are supported by evidence and there has been no fraud. The jurisdiction of a reviewing court is confined to questions of law. "Supported by the evidence" means supported by substantial evidence, which is "something more than a scintilla of evidence, but may be less than a preponderance of the evidence." Gypsy Highview Gathering System v. Stokes (1986), 221 Mont. 11, 15, 716 P.2d 620, 623. This Court has interpreted  39-51-2410(5), MCA, in Noone v. Reeder (1968), 151 Mont. 248, 252, 441 P.2d 309, 312, stating:

> The court is not permitted to balance conflicting evidence in support of and in opposition to the Commission's findings of fact, nor to determine which is the more substantial evidence, nor to consider where the preponderance of the evidence lies; for to do so would be to substitute the Court's view of the evidence for that of the Commission, and effectively nullify the conclusive character of the Commission's findings of fact as provided by statute.

When a District Court reviews a decision of the Board and adopts the decision of the Board of Labor Appeals, the court must first determine if substantial evidence supports the Board's factual findings. If so, those facts are conclusive. A court is permitted to make different findings only if it determines that no substantial evidence exists for the Board's findings. Dick Irvin, Inc. v. Department of Labor (1983), 207 Mont. 336, 340, 673 P.2d 1271, 1273. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion or, stated another way, enough evidence to justify a refusal to direct a verdict on a factual issue in a jury trial." Noone, 151 Mont. at 252, 441 P.2d at 311-12.

Once disputes about the underlying facts are resolved, the issue of whether a claimant is an independent contractor or employee is a question of law. Northwest Publishing v. Department of Labor and Industry (1993), 256 Mont. 360, 362, 846 P.2d

1030, 1031. Our standard of review of a question of law is whether the conclusion is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

In its findings of fact, the District Court correctly stated that if "the Board's findings of fact are supported by the evidence, then they are to be considered conclusive by this Court, and the jurisdiction of this Court is confined to questions of law." An examination of the record demonstrates the Board's decision was supported by substantial evidence. The following findings of fact made by the appeals referee and adopted by the Board are supported by substantial evidence in the record:

[1] PPT is engaged in the principal business of providing physical therapy services to patients on an individual basis. PPT is owned and operated by Janet Hulme.

[2] Hulme and Nevin are individually registered and licensed physical therapists.

[3] On July 1, 1990, Hulme and Nevin entered into a "Contract for Rental of Facilities and Administrative Services." This contract stipulates that PPT was to provide treatment facilities, client billing and collection, and secretarial services to Gail Nevin. Gail Nevin was to provide scheduling instructions to the secretary, patient treatment, and client record keeping. Nevin was to pay fifty (50%) of the fees she earned to PPT. The term of the agreement was from July 1, 1990, through December 31, 1991. Either Ms. Hulme or Ms. Nevin could terminate the agreement with thirty (30) days written notice. The contract did not indicate that either party had any liability for breach of the contract.

[4] The fees collected by Nevin and by the PPT secretary for services provided by Nevin were deposited in PPT's business account. On a monthly basis, Hulme made payments to Nevin out of the business account based upon 50% of the fees generated by Nevin. Nevin did not have check signing authority on that business account.

[5] PPT did all the billing, collection, and advertising under the name of PPT.

[6] PPT provided all equipment and supplies.

[7] The patients were assigned to either Hulme or Nevin by the PPT secretary based upon patient request, referral, or availability.

[8] The patients' files were intermingled and not separated by provider. Nevin did not keep a separate set of files on her patients. The contract required Nevin to properly document the patients' files. The patients' files were available for review by PPT.

[9] Nevin is not a partner in, or an owner or co-owner of, PPT.

The District Court properly declined to enter any factual findings of its own. Dick Irvin, Inc., 207 Mont. at 340, 673 P.2d at 1273. Therefore, the findings are conclusive and our review is limited to questions of law. Section 39-51-2410(5), MCA.

Under Montana law, an individual performing services for wages is generally considered to be an employee. Section 39-51-203(4), MCA, states:

> Service performed by an individual for wages is considered to be employment subject to this chapter until it is shown to the satisfaction of the department that the individual is an independent contractor.

Wages are defined as follows:

> Wages means all remuneration payable for personal services including commissions and bonuses, the cash value of all remuneration payable in any medium other than cash, and back pay received pursuant to a dispute related to employment.

Section 39-51-201(19)(a), MCA.

Under the contract, Nevin was required to pay fifty percent of the fees she earned to PPT. PPT collected the fees generated by Nevin and deposited the money into PPT's bank account. Nevin did not have access to this account. At the end of the month, Nevin was paid out of the bank account fifty percent of the fees generated by her. PPT argues that this was for the use of the facilities and administrative services provided to her. Thus, PPT contends, Nevin did not provide any service to PPT, instead PPT provided services to Nevin.

The appeals referee rejected PPT's office sharing argument and further determined that it was Nevin who was providing services to PPT. Under their agreement, it was PPT who realized a profit based upon fifty percent of the fees generated by Nevin. Accordingly, it was PPT who suffered a loss when Nevin did not perform her services. The appeals referee concluded that, given the payment arrangement, Nevin was being paid by PPT for services rendered on a commission-type basis. Commissions are wages. Section 39-51-201(19)(a), MCA. An individual performing services for wages is generally considered to be an employee. Section 39-51-203, MCA. Thus, the Board could properly conclude that Nevin was an employee of PPT performing services for wages.

At this point, for PPT to avoid the imposition of unemployment taxes, it must establish that Nevin was performing services for PPT as an independent contractor.

PPT argues that if Nevin is seen as having treated patients for PPT, it is clear that she should have done so as an independent contractor. PPT states that Nevin was not controlled by PPT at all and was engaged in an independent practice. UID counters that the evidence does not show that Nevin was an independent contractor and not an employee.

The two-part test to determine whether an individual is an independent contractor is found at 39-51-201(14), MCA:

     "Independent contractor" means an individual who renders service in the course of an occupation and:

          (a) has been and will continue to be free from control or direction over the performance of the services, both under a contract and in fact;  and

          (b) is engaged in an independently established trade, occupation, profession, or business.

     This test is commonly known as the AB test.  The determining factor under both the statute and at common law is control.  The first, or "A," part of the test requires that in order for an individual to be an independent contractor, that individual must be free from control or direction over the performance of such services.  This Court has previously recognized four factors to consider in determining if the right to control exists: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire.  Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 425, 584 P.2d 1298, 1301-02 (citing Larson's Workmen's Compensation Law, Vol. 1A, Sec. 44.31, pp. 8-35).

     Evidence of PPT's control over Nevin was demonstrated by the contract and the parties' actions.  The contract provides the PPT will provide treatment facilities subject to availability.  PPT retained the right to terminate the contract without any reason upon thirty-days' notice.  Nevin relied on PPT to bill, collect, deposit, and disburse the fees she generated; and to provide facilities, equipment, supplies, advertising, and referrals. In addition, Nevin was required to keep client records.  Even if PPT did not exercise control over Nevin, it clearly had the right to control her.  The right of control, not just the exercise of control, is determinative. Section 39-51-201(14), MCA; Sharp, 178 Mont. 419, 584 P.2d 1298.

     Evidence of employment was also found in the method by which Nevin received compensation from the fees she generated.  Nevin was paid fifty percent of the fees she generated.  As stated above, this was akin to being paid on a commission type basis. Being paid on a commission basis is not inconsistent with employee status.  Zimmer-Jackson v. Department of Labor and Industry (1988), 231 Mont. 357, 752 P.2d 1095.

     The evidence showed that PPT provided all of the equipment, supplies, and the facilities necessary for providing physical therapy treatment. Nevin admitted that PPT provided her with an ultrasound machine, HVGs, mirco current, FES, thermophore, computer and software, home units, office furniture, telephone, file cabinet, reference books, and tapes.

     Another indication that PPT retained control over Nevin was the fact that the

relationship between the two was terminable at will without liability on the part of either
party.  The contract does not provide any just cause or other grounds that are necessary
to terminate the agreement.  The ability to terminate the agreement without cause creates
the potential  for control.  Kirby Co. of Bozeman v. Employment Sec. Div. (1980), 189
Mont. 1, 9, 614 P.2d 1040, 1044.  In this case, if PPT terminated the agreement with
Nevin, Nevin would have to purchase expensive equipment and find a new location to
provide physical therapy treatment.

The above combination of factors demonstrated that PPT retained control over
Nevin, thereby establishing that their relationship was one of employment. As PPT has
failed to establish evidence in support of a conclusion that there is an absence of control
over Nevin under the "A" prong of the test, we need not consider the "B" prong of the
test.  Larry's Post Co. v. Unemployment Insurance Division, Contributions Bureau
(1989), 238 Mont. 190, 196, 777 P.2d 325, 329.  This Court concludes that the District
Court's decision affirming the Board is a correct interpretation of the law, given the
evidence.

PPT makes a final argument that the intent of the parties must be given effect in
resolving their status.  Both Nevin and Hulme, owner of  PPT, testified that they had a
mutual intention to have independent professional practices, sharing facilities.  In support
of its argument, PPT cites Nevin's and Hulme's testimony where both indicate that they
never intended that Nevin would be an employee of PPT.  PPT asserts that   28-3-301,
MCA, requires that the intent of PPT and Nevin be honored.  Section 28-3-301, MCA,
states: "A contract must be so interpreted as to give effect to the mutual intention of the
parties as it existed at the time of contracting, so far as the same is ascertainable and
lawful."

The ability to contract is not absolute and without limits.  Parties cannot privately
waive statutes enacted to protect the public in general. Section 1-3-204, MCA; Hoehne
v. Sherrodd, Inc. (1983), 205 Mont. 365, 369, 668 P.2d 232, 234.  The Unemployment
Insurance Act was enacted to protect the "public good and the general welfare of the
citizens of this state."  Section 39-51-102, MCA.  Furthermore, the Unemployment
Insurance Act precludes an individual from waiving his rights to benefits or other rights
under the unemployment insurance chapter. Section 39-51-3102, MCA.

This Court concludes that the intentions of PPT and Nevin to merely be
independent practices, sharing facilities, does not control the outcome of Nevin's status.
Nevin must be proven to have been independent in fact.  Schrock v. Evans Transfer and
Storage (1987), 225 Mont. 348, 351, 732 P.2d 848, 850.  The wishes of Nevin and PPT
that Nevin is a nonemployee are not dispositive.

In conclusion, there is substantial evidence in the record to establish that

Nevin did
not have a business separate from PPT or that she was an independent contractor working
with PPT.  This Court determines that the decision of the District Court affirming the
Board of Labor Appeals is correct as a matter of law and is affirmed.

                        /S/   JIM REGNIER


We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER
/S/   JAMES C. NELSON

Justice W. William Leaphart did not participate in this decision.

Justice Karla M. Gray, dissenting.

      I respectfully dissent from the Court's opinion.  The Court addresses only
obliquely and, in my view, incorrectly the threshold issue raised by PPT; namely,
whether "employment" existed as defined by statute.  Because I conclude that it did not
and that this issue is dispositive, I would reverse the District Court's affirmance of the
Board's decision.
      Unemployment insurance law is governed by statute in Montana and liability for
payment of unemployment insurance taxes is determined pursuant to statutory standards
and definitions.  The threshold question in every unemployment insurance tax proceeding
is whether employment exists, and "employment" is statutorily defined, in pertinent part,
as "service by an individual . . . performed for wages . . . ."  Section 39-51-203 (1),
MCA.  Moreover, such "[s]ervice performed by an individual for wages is considered
to be employment . . . until it is shown to the satisfaction of the department that the
individual is an independent contractor."  Section 39-51-203(4), MCA.  Under these
statutes, therefore, and subject to enumerated exclusions from the term "employment" set
forth in  39-51-204, MCA, once it is determined that the individual is performing
service for wages--that is, once "employment" is established--the burden is on the party
against whom the Department is proceeding to establish that the individual at issue is an
independent contractor rather than an employee.  In other words, the burden of
establishing independent contractor status does not arise until it has been established that
the individual at issue was performing services for wages for the person or entity against

which unemployment insurance tax liability is sought. Sections 39-51-203(1) and 39-51-203(4), MCA.

In the present case, the hearing officer properly stated the issue as whether Nevin's services were employment pursuant to 39-51-203, MCA. He then made findings relating to the contract and the actual working arrangements between PPT and Nevin, specifically finding that Nevin was not a partner, owner or co-owner of PPT. On the basis of the latter finding, the hearing officer concluded that Nevin must be either an employee or an independent contractor. He further concluded that services performed for wages constitutes employment and, therefore, that the burden was on PPT to establish that the service performed was not employment. After applying independent contractor-related principles, the hearing officer ultimately concluded that PPT had not established that Nevin was an independent contractor and, indeed, that an employer-employee relationship existed between them. The Board adopted the hearing officer's findings and decision and, after remand, expressly determined that no errors of law had occurred. The District Court affirmed the Board's decision, focusing--as had the hearing officer and the Board--on the "independent contractor" issue. In my opinion, the District Court erred in doing so.

As discussed above, a determination that "employment" exists, as defined by 39-51-203(1), MCA, is a necessary prerequisite to a determination of whether an individual is an independent contractor. See 39-51-203(4), MCA. In this case, the determination of "employment" would require findings that Nevin performed services for PPT for wages, and such findings would support a conclusion--for purposes of 39-51-203(1) and 39-51-203(4), MCA--that employment existed. Such findings and conclusion would provide the necessary foundation upon which a subsequent determination could be made as to employee or independent contractor status.

Here, however, the foundational findings and conclusion that employment existed were not made. Findings were made that Nevin was to provide--and did provide--treatment to patients as a licensed physical therapist. Additional findings were made that PPT was to provide--and did provide--a wide variety of services to Nevin for which Nevin was to pay PPT 50% of the fees she earned from treating patients. Further, a finding was made that, after Nevin deposited her fees in PPT's business account, PPT paid Nevin 50% of Nevin's fees monthly, keeping the 50% Nevin was required by the contract to pay PPT for the services PPT provided to Nevin. No findings were made that Nevin was paid wages for services performed for PPT and no conclusion was made that "employment" existed. As a result, the necessary predicate for a determination of whether Nevin was an employee or an independent contractor--namely, a determination that "employment" existed in that Nevin performed services for PPT for wages--does not exist here. Consequently, it is my opinion that the Board erred as a matter of law

in determining that no legal error had occurred, the District Court erred in affirming that decision and this Court errs in affirming the District Court.

Stated briefly, the mischief in this case is that the hearing officer began in mid-stream and improperly placed the entire burden on PPT. The Department was not required to make the initial showing that employment existed via Nevin's performance of services for PPT for wages before the burden shifted to PPT to establish that Nevin was, in fact and in law, an independent contractor.

Nor would the record in this case support findings that Nevin performed services for PPT so as to produce a threshold conclusion that employment existed. The contract clearly provides that Nevin was to pay PPT 50% of the fees she collected for patient treatment performed by her in return for use of its facilities and administrative services. Nothing in the contract requires, or suggests in any way, that Nevin was to perform services for PPT. Moreover, the record establishes that PPT and Nevin operated in conformance with their contract, with Nevin paying PPT for the services PPT provided to her. The fact that Nevin deposited the entirety of her fees into PPT's account and PPT then "paid" 50% of those fees back to Nevin on a monthly basis does not establish that PPT was paying Nevin for services Nevin performed for PPT; regardless of the cumbersome pay-in/pay-back administrative process under which PPT and Nevin operated, the 50% payment flowed from Nevin to PPT, pursuant to the contract, for services PPT provided to Nevin thereunder. Thus, the record contains no evidence which would support a finding that Nevin performed services for PPT for wages.

I fully recognize the state's significant interest in furthering the public policies which underpin the Unemployment Insurance Law. Those public policies are to lessen the serious menace to the health, morals and welfare of the people of Montana produced by economic insecurity due to unemployment, and to prevent the spread--and lighten the burden--of involuntary unemployment by requiring the assessing of unemployment taxes under the police powers of the state. Sections 39-51-102(1) and 39-51-102(2), MCA. Those purposes are not furthered, however, by allowing the Department to avoid having to make an initial showing that employment exists, especially in a case such as this which involves neither unemployment nor involuntary unemployment. Moreover, as discussed above, the statutes duly enacted by the legislature to advance its stated public policies do not support the Court's rationale in this case. Indeed, those statutes appear to have been carefully crafted to advance the underlying policies while providing protection to purported employers by requiring that the Department first establish, at the outset, that employment exists.

No evidence exists in the record which would support findings that Nevin

performed services for PPT for wages.  On that basis, I would conclude that "employment" was not established in this case and that, absent "employment," it was legal error to reach the question of whether PPT established that Nevin was an independent contractor rather than an employee.  Accordingly, I would hold that the District Court erred in affirming the Board's decision that Nevin was an employee of PPT

for unemployment tax purposes and reverse.

/S/   KARLA M. GRAY